**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SALVADOR AZARTE; CELIA
CASTELLON,

                *Petitioners,*

v.

JOHN ASHCROFT, Attorney General,
                *Respondent.*

No. 02-73947

Agency Nos.
A76-356-446
A76-356-447

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 14, 2004—San Francisco, California

Filed January 18, 2005

Before: Stephen Reinhardt, M. Margaret McKeown, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Reinhardt

**COUNSEL**

Marina Pineda-Kamariotis, Law Office of Marina Pineda-Kamariotis, San Francisco, California, for the petitioners.

Peter D. Keisler, Assistant Attorney General, Civil Division, Washington, DC; David V. Bernal, Assistant Director, Office of Immigration Litigation, Civil Division, Washington, DC; Jamie M. Dowd, Trial Attorney, Office of Immigration Litigation, Civil Division, Washington, DC, for the respondents.

**OPINION**

REINHARDT, Circuit Judge:

Under the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), does the Board of Immigration

Appeals (BIA) abuse its discretion when it dismisses a motion to reopen, timely filed by an alien during his voluntary departure period, because the alien subsequently fails to depart prior to the end of that period while awaiting the BIA's decision? We conclude that it does and that the BIA must decide the motion on the merits.

## I. BACKGROUND

Salvador Azarte and Celia Castellon ("the Azartes") are natives and citizens of Mexico who entered the United States without inspection in 1987. On April 20, 1990, the Azartes were married in California. They have two children, Jahir, who is now nine, and Nahivy, who is now ten. Both children are U.S. citizens.

The Immigration and Naturalization Service ("INS") commenced removal proceedings against the petitioners on April 17, 1997. The Azartes were charged with being subject to removal as aliens present in the United States without being admitted or paroled. *See* Immigration and Naturalization Act ("INA") § 212(a)(6)(A)(I); 8 U.S.C. § 1182(a)(6)(A)(i) (2004). Petitioners conceded their removability and requested relief in the form of cancellation of removal, INA § 240A(b), 8 U.S.C. § 1229b(b) (2004), and, in the alternative, voluntary departure, INA § 240B, 8 U.S.C. § 1229c (2004). On April 5, 1999, the Immigration Judge ("IJ") denied their request for cancellation of removal but granted voluntary departure.

In denying cancellation of removal, the IJ concluded that the Azartes had established two of the statutory requirements for such relief—ten years continuous residence and good moral character during such period.[1] However, the IJ decided

---

[1] 8 U.S.C. § 1229b(b) (1997) provided that an individual applying for cancellation of removal must prove that:

(1) he has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

that the Azartes failed to establish the third requirement, namely that removal to Mexico would result in exceptional and extremely unusual hardship to their United States citizen children. The Azartes' children, who were three and four years old at the time, were in good health and did not suffer from any mental, emotional, or physical problems at the time of the IJ's hearing.

The Azartes appealed the IJ's decision to the BIA, and, on April 23, 2002, the BIA affirmed the IJ's decision without opinion and permitted the Azartes thirty days, until May 22, 2002, to depart voluntarily from the country. On the bottom of the order, the BIA notified the petitioners of the three consequences of failing to depart within that period: (1) "the alien shall be removed," (2) "the alien shall be subject to a civil penalty of not less than $1,000 and not more than $5,000," and (3) the alien "shall be ineligible for a period of 10 years for any further relief."

On May 16, 2002, seven days prior to the expiration of the thirty days allotted for voluntary departure, the petitioners timely filed a motion to reopen with the BIA pursuant to 8 U.S.C. § 1229a(c)(6)(A) (2004) and 8 C.F.R. § 3.2(c) (2002) (later recodified as 8 C.F.R. § 1003.2(c) (2004)). With their motion to reopen, the Azartes requested a stay of deportation and submitted evidence regarding their son Jahir's newly diagnosed mental disabilities. The Azartes hoped that this information would persuade the BIA that their departure from the United States would constitute an exceptional and extremely unusual hardship for their American-citizen son.

---

(2)   he has been a person of good moral character during such period;

(3)   removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

Among the new evidence that the Azartes included in their motion to reopen was a statement from psychologist Jose Lopez, Ph.D., to whom Jahir had been referred by a school counselor because of his behavioral problems. Dr. Lopez diagnosed Jahir as suffering from Attention Deficit Hyperactivity Disorder (ADHD). He recommended medical evaluation by a child psychiatrist and pediatrician and a comprehensive treatment plan, including individual therapy, medication, behavior modification, and collaborative intervention by Jahir's parents and school. Dr. Lopez also recommended continued regular treatment for Jahir's inadequate control over his bodily functions, including enuresis and encopresis. The Azartes also submitted a letter from Illana Kent, M.A., a psychotherapist, who stated that Jahir, in addition to having ADHD, suffered from increased anxiety and depression, for which he was receiving ongoing treatment. Finally, the Azartes included a declaration from Jahir's mother averring that her husband's medical insurance from his job in the United States was the source of payment for Jahir's therapy. She also stated that the family would be unable to afford continued treatment and medicine for her son if they were deported to Mexico.

The BIA did not act on the petitioners' motion until approximately six months later, on October 28, 2002. Then, in a one-judge order, the BIA concluded that, because the petitioners failed to depart voluntarily as specified, they were ineligible for cancellation of removal. The Azartes timely filed a petition for review with this court.

## II.   JURISDICTION

We have jurisdiction over the BIA's denial of the Azartes' motion to reopen pursuant to 8 U.S.C. § 1252. *See Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1169-70 (9th Cir. 2003).

## III. ANALYSIS

### A. *Explanation of the Issue*

We must decide whether, under IIRIRA, the BIA's failure to rule on a petitioner's motion to reopen prior to his voluntary departure date either requires or authorizes it to decline to rule on the merits of the motion. In IIRIRA, Congress provided for both voluntary departures and motions to reopen. At the conclusion of removal proceedings, an alien may be granted up to 60 days within which to voluntarily depart and may file a single motion to reopen within 90 days. *See* 8 U.S.C. § 1229c(b)(2) (2004); 8 U.S.C. § 1229a(c)(6)(i) (2004). This case concerns the interrelationship between these statutory provisions and the pertinent regulations of the Executive Office for Immigration Review (EOIR), Immigration and Naturalization Service (INS), the Department of Justice (DOJ), and the Department of Homeland Security (DHS).

[1] Under the BIA's current interpretation, the INA's voluntary departure and motion to reopen provisions affect each other in two ways. First, if an alien departs within his voluntary departure period, he forfeits any motion to reopen he may have filed because he is no longer within the United States. 8 C.F.R. § 1003.2(d) (2004). Second, as demonstrated by the BIA's decision in the Azartes' case, the BIA has decided that if an alien fails to depart within his voluntary departure period, he also forfeits any pending motion to reopen because he has violated his voluntary departure order and is, therefore, no longer eligible to receive the underlying relief.[2] The BIA's

---

[2] *See* 8 U.S.C. § 1229c(d) (2004) (explaining that failing to depart will result in a fine of $1,000-$5,000 and ineligibility "for a period of 10 years for any further relief under this section [voluntary departure] and sections 240A [cancellation of removal ], 245 [adjustment of status], 248 [change of nonimmigrant classification], and 249 [record of lawful admission]"). Thus, under the BIA's interpretation, an alien who chooses to wait for the BIA to act not only forfeits his pending motion to reopen but is barred from obtaining relief for a 10 year period.

interpretation is not required by any EOIR, INS, DOJ, or DHS regulation.[3] The consequences of the interpretation, however, are drastic. As the BIA rarely if ever rules on a motion to reopen before an alien's voluntary departure period has expired, the interpretation serves to deprive aliens who are afforded voluntary departure of their statutory right to a determination on the merits of motions to reopen.

In the Azartes' case, the couple filed their motion to reopen well within both their voluntary departure period and the 90-day statutory period for motions to reopen. However, as is the case generally, the BIA had not ruled on their motion by the date they were required to depart voluntarily. Had the Azartes left prior to that date or at any time before the BIA acted on their motion to reopen, the BIA would have dismissed the motion on the ground that the Azartes were no longer in the country. Instead, they stayed, only to have the BIA summarily dismiss their motion because they had failed to depart. Either way, stay or go, under the BIA's interpretation, the Azartes were precluded from obtaining a ruling on the merits of their properly filed, timely motion to reopen. Under that interpretation, it is not only the Azartes but the large class of aliens afforded voluntary departure who are functionally deprived of their statutory right to file a motion to reopen as a result of the requirements and consequences of the award of voluntary departure.[4]

---

[3]Indeed, the Department of Justice explicitly "has not adopted any position" on the effect of voluntary departure periods on motions to reopen. *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312, 10,325-26 (March 6, 1997) (interim rule).

[4]It would not have helped the Azartes to have asked for an extension of their voluntary departure period, although they did request a stay of removal that was never acted upon by the BIA. First, under the Department of Justice's interpretation, aliens may not receive more than 60 days for voluntary departure when granted at the conclusion of the removal proceedings. 8 C.F.R. § 1240.26(e). Therefore, even if the Azartes had been granted the additional 30 permissible days, it would not have mattered

*B.   History of Motions to Reopen and Voluntary Departure*

To understand the relationship between motions to reopen and voluntary departure, a short history of these provisions is useful.

1.   *Motions to Reopen*

A motion to reopen is a traditional procedural mechanism in immigration law with a basic purpose that has remained constant—to give aliens a means to provide new information relevant to their cases to the immigration authorities. *See* Charles Gordon, Stanley Mailman, & Stephen Yale-Loehr, *Immigration Law and Procedure* § 3.05[7][a] (2004) [hereinafter *Immigration Law and Procedure*]. Motions to reopen were entertained by the Immigration Bureau at least as early as 1916,[5] and, with the rise of the administrative state, this form of relief was included in regulations.[6] *See Achacoso-*

---

because the BIA did not decide their motion to reopen for over five months. Moreover, "[u]nder present practice the Board does not consider requests to extend time for voluntary departure," making any such request futile. Charles Gordon, Stanley Mailman, & Stephen Yale-Loehr, *Immigration Law and Procedure* § 3.05[7][d] (2004). This policy is in stark contrast to the BIA's pre-IIRIRA practice, when the district director often reinstated voluntary departure nunc pro tunc, if the alien demonstrated a present willingness to depart. *See Immigration Law and Procedure* § 74.02[4][a].

[5]*See, e.g.*, *Chew Hoy Quong v. White*, 244 F. 749, 749 (9th Cir. 1917) (concerning an application to reopen to explain discrepancies in testimony); *Ex Parte Chan Shee*, 236 F. 579 (N.D. Cal. 1916) (concerning an application to the Immigration Bureau to reopen for proof of marriage).

[6]*See, e.g.*, *New Regulations Governing the Arrest and Deportation of Aliens*, 6 Fed. Reg. 68, 71-72 (January 4, 1941) (containing the first mention of motions to reopen in the Federal Register and promulgating regulations under Title 8, Chpt. 1, § 19.8 for motions to reopen); *see also Board of Immigration Appeals: Power; and Reopening or Reconsideration of Cases*, 27 Fed. Reg. 96, 96-97 (January 5, 1962) (promulgating the original § 3.2 reopening provision upon which the current motion to reopen regulation is based).

*Sanchez v. INS*, 779 F.2d 1260, 1264 (7th Cir. 1985); *Immigration Law and Procedure* § 3.05[7][a]. These regulations did not provide a time limit for motions to reopen. *See, e.g.*, *New Regulations Governing the Arrest and Deportation of Aliens* § 19.8(a), 6 Fed. Reg. 68, 71-72 (January 4, 1941); 8 C.F.R. § 3.2 (1995); *Socop-Gonzales v. INS*, 272 F.3d 1176, 1190 (9th Cir. 2001). Then, approximately 50 years later, Congress, in the Immigration Act of 1990 (IMMACT 90), demonstrated concern that aliens were abusing certain forms of regulatory relief, including motions to reopen. 101 Pub. L. 649, §545; 104 Stat. 4978, 5066. It directed the Attorney General to conduct a study on the use of motions to reopen and required him to place limits on the time period for, and allowed number of, such motions. *Id.*[7] Pursuant to IMMACT 90, the Department of Justice promulgated a final rule on April 29, 1996 that required that any "motion [to reopen] must be filed not later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened . . . ." *Executive Office for Immigration Review; Motions and Appeals in Immigration Proceedings*, 61 Fed. Reg. 18,900, 18,905 (April 29, 1996).

Significantly, a major change in the status of motions to reopen came in 1996 with the enactment of IIRIRA. Motions to reopen were transformed from a regulatory to a statutory form of relief. Specifically, IIRIRA provided the first statutory right to a motion to reopen. 8 U.S.C. § 1229a(c)(6)(a) (1996). This statutory authorization has remained to the present day. 8 U.S.C. § 1229a(c)(6)(A) (2004). In addition, the regulations creating a 90-day filing period and limiting aliens to a single motion to reopen that the Department of Justice had promulgated were enacted as statutory requirements.[8] 8

---

[7]In 1991, the Attorney General's report found that there was "no abuse" of motions to reopen. *Attorney General's Report to Congress on Consolidation of Requests for Relief from Deportation*, 68 *Interpreter Releases* 907, 908 (July 22, 1991).

[8]This 90-day time limit does not apply in asylum cases involving changed circumstances. *See* 8 U.S.C. § 1229a(c)(6)(C)(ii).

U.S.C. § 1229a(c)(6)(C)(i) (2004); 104 Pub. L. 208 § 304 (amending § 240(c)(6)(C)(i) of the INA) ("Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.").

These new statutory provisions were implemented by 8 C.F.R. § 3.2(c) (1997)[9] and recodified as 8 C.F.R. § 1003.2(c) (2004).[10] Important to the case before us, neither the statute nor the BIA regulations establish a time by which the BIA must make its decision regarding a motion to reopen. In practice, it takes the BIA more than a month and often many months or even years to issue a decision. *See, e.g.*, Press Release, Dept. of Justice, Attorney General Issues Final Rule Reforming Board of Immigration Appeals Procedure (August 23, 2002) *available at* http://www.usdoj.gov/opa/pr/2002/August/02_eoir_489.htm (last visited November 19, 2004) (explaining that, as of February 2002, the BIA had a back load of 56,000 cases, over 10,000 of which had been pending for more than three years).

## 2.  *Voluntary Departure*

Voluntary departure also has a long history in American immigration law, dating back at least through four generations of immigrants.[11] It was "a device originally developed by

---

[9] *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312 (March 6, 1997) (interim rule).

[10] *Aliens and Nationality; Homeland Security; Reorganization of Regulations*, 68 Fed. Reg. 9824 (February 28, 2003) (final rule).

[11] *See, e.g.*, *United States ex rel. Patton v. Tod*, 292 F. 243, 244 (S.D.N.Y. 1923) (containing the first mention of voluntary departure in a federal reporter); *Control of Persons Entering and Leaving the United States Pursuant to the Act of May 22, 1918, As Amended*, 6 Fed. Reg. 5911, 5912 (November 22, 1941) (promulgating regulation concerning "[a]liens under deportation proceedings who are given permission to depart at their own expense in lieu of deportation").

administrative officers, in the absence of a specific mandate in the statute." *Immigration Law and Procedure* § 74.02[1]. In 1940, Congress first provided statutory authority for voluntary departure. *Id.* (explaining that the Alien Registration Act of 1940 § 20, 54 Stat. 670, 672-73, first statutorily provided this relief). Voluntary departure serves the practical goals of reducing the costs associated with deporting individuals from the United States and providing a mechanism for illegal aliens to leave the country without being subject to the stigma or bars to future relief that are part of the sanction of deportation.[12] Prior to IIRIRA, the authority for voluntary departure was contained in INA § 244(e), 8 U.S.C. § 1254(e) (1995) (repealed 1996), which provided no time restriction on the period of voluntary departure. In practice, voluntary departure was granted for generous periods of time. *See* Austin T. Fragomen, Jr. & Steven C. Bell, *Immigration Fundamentals* § 7:4.6[A] (4th ed. 2004) ("Voluntary departure was often granted for periods exceeding 120 days under [pre-IIRIRA] law, sometimes in one or two-year increments for certain classes of aliens."); Stephen Yale-Loehr & Stanley Mailman, *Myth of April 1: How the 1996 Immigration Law Affects People Out of Status in the U.S.*, *available at* http://www.clubcyrus.com/twmlaw/resources/1996/19963cont.htm (last visited November 19, 2004) (explaining that, before IIRIRA, the INS "often granted voluntary departure for up to a year at a time.").

IIRIRA drastically limited the time allowed for voluntary departure. Aliens can now be granted a maximum of 120 days, if voluntary departure is granted before the conclusion

---

[12]*See, e.g.*, *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312, 10,324 (interim rule) (March 6, 1997) (explaining that voluntary departure allows the Service to allocate its enforcement resource more efficiently, saves resources as the aliens depart at their own expense, and "benefits the aliens involved by allowing them to avoid the harsh consequences of a formal deportation order"); *Immigration Law and Procedure* § 74.02[2][b].

of the proceedings before the immigration judge,[13] and 60 days, if granted when the immigration judge enters his order.[14] IIRIRA § 304; (creating INA § 240B, codified at 8 U.S.C. § 1229c (2004)). Generally, the EOIR, INS, and DHS have interpreted this deadline strictly. *See, e.g.*, 8 C.F.R. § 1240.26(f) (2004) ("In no event can the total period of time, including any extension, exceed 120 days or 60 days as set forth in section 240B of the Act [8 U.S.C. § 1229c]"). However, in issuing the latest regulations concerning the relationship between these provisions, the Department of Justice explained that it "has not adopted any position" on the question before us today: the effect of voluntary departure periods on motions to reopen. *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312, 10,325-26 (March 6, 1997) (interim rule). Accordingly, we today confront a BIA adjudicatory decision rather than a product of reasoned notice-and-comment rulemaking.

## C.   *Statutory Interpretation*

In reviewing administrative interpretations of statutes, we look first to the principles set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The first step under *Chevron* is to determine whether the statutory meaning is unambiguous. *Id.* at 843. No deference to the view of the administrative agency is necessary when "normal principles of statutory construction suffice" to determine the statute's meaning. *See, e.g.*, *Perez-Gonzales v. Ashcroft*, 379 F.3d 783, 786 (9th Cir. 2004) (citations omitted). Such is the case here.

---

[13] 8 U.S.C. § 1229c(a)(2)(A) (2004); 8 C.F.R. § 1240.26(b)(1)(i)(A) (2004). Furthermore, before the completion of the hearing, the parties can stipulate to 120 days of voluntary departure. 8 C.F.R. § 1240.26(b)(2) (2004).

[14] 8 U.S.C. § 1229c(b)(2) ("Permission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days.")

**[2]** "The starting point for [the] interpretation of a statute is always its language," *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989), and "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992). With respect to motions to reopen and voluntary departure, Congress' language in IIRIRA is clear and unambiguous:[15] "An alien may file one motion to reopen proceedings." 8 U.S.C. § 1229a(c)(6)(A) (2004). "[T]he motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(6)(C)(i) (2004). "The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense . . . ." 8 U.S.C. § 1229c(a)(1) (2004). "Permission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days." 8 U.S.C. § 1229c(b)(2) (2004). There is no doubt that Congress intended to give the Attorney General's designates the ability to grant voluntary departure for up to 60 days[16] and allow aliens to file a motion to reopen within

---

[15]Indeed, these provisions are at least as clear as the provision examined by *Shaar v. INS*, 141 F.3d 953, 956 (9th Cir. 1998):

> Subject to subparagraph (B), any alien allowed to depart voluntarily under section 1254(e)(1) of this title or who has agreed to depart voluntarily at his own expense under 1252(b)(1) of this title who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for relief described in paragraph (5) for a period of 5 years after the scheduled date of departure or the date of unlawful entry, respectively.

*Id.* at 956 (quoting 8 U.S.C. § 1252b(e)(2)(A) (1995) (repealed 1996)). The *Shaar* court held that this provision, the precursor to the current voluntary departure law, was "clear and unambiguous." *Id.* The *Shaar* court therefore did not go beyond the first step under *Chevron. Id.* ("Having found that language clear and unambiguous, we need go no further and, the Shaars' arguments notwithstanding, we need not even consider the legislative history.").

[16]This period is tolled pending appeal, and voluntary departure can subsequently be reinstated after a BIA decision. *See Matter of Chouliaris*, 16 I. & N. Dec. 168 (BIA 1977).

90 days. The only question is how these two provisions interact. Fortunately, the traditional canons of statutory construction provide sufficient guidance to enable us to answer that question.

### 1. New Law Requires New Interpretation

**[3]** The passage of IIRIRA drastically altered many important statutory provisions in immigration law. *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1170 (9th Cir. 2003). Such legislative change forces us to reexamine our previous holdings. *Id.* In particular, three major changes in both statute and practice force us to examine the applicability of *Shaar v. INS*, to post-IIRIRA cases. 141 F.3d 953 (9th Cir. 1998) (holding, pre-IIRIRA, that the BIA may deny a motion to reopen on the ground that an alien failed to leave the country by his voluntary departure date, even though his motion to reopen was filed before that date). We hold that because the rationales that underlay *Shaar* are no longer applicable after IIRIRA, *Shaar* does not control our decision in this case.[17] *Cf. Zazueta-Carrillo*, 322 F.3d at 1172 n.6 ("[G]iven the vast and striking changes effected by IIRIRA, which vitiate or substantially eliminate all the reasons underlying *Contreras-Aragon*, *Contreras-Aragon* cannot control our decision here.")

First, *Shaar* did not discuss any Congressional purpose to allow motions to reopen, and for good reason.[18] Pre-IIRIRA, there was no statutory authorization for motions to reopen. Therefore, *Shaar*'s statutory interpretation concerned only a single statutory provision—a provision relating to voluntary

---

[17]While this court has continued to cite *Shaar* for standard propositions of immigration law, such as the standard of review applicable to motions to reopen, *see, e.g.*, *Gonzalez de Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004), we have not extended its voluntary departure analysis to the post-IIRIRA context.

[18]Nor did the BIA decision, *In the Matter of Shaar*, 21 I. & N. Dec. 541 (BIA 1996).

departure—which has now been superceded. 8 U.S.C. § 1252b(e)(2)(A) (1995) (repealed by IIRIRA in 1996); *Shaar*, 141 F.3d at 956. In the case at hand, in contrast, we confront two new statutory provisions, both created by IIRIRA.

Second, neither the pre-IIRIRA statute on voluntary departure nor the pre-IIRIRA regulation on motions to reopen had any time limits. 8 U.S.C. § 1254(e) (1995) (repealed 1996); 8 C.F.R. § 3.2 (1995). Aliens were granted long periods within which to depart and their motions to reopen were never time-barred. *See supra* pp. 752-53, 754-55. These generous time-frames made it possible for an alien to file a motion to reopen and receive a decision during his voluntary departure period, a possibility that, post-IIRIRA, has been practically fore-closed by the BIA's interpretation. For example in *Shaar*, the aliens had first been given a year to depart voluntarily, were then given a six-month extension, and could have requested further extensions of their voluntary departure period so that their motion to reopen might be decided during that period. 141 F.3d at 955.[19] Thus, in *Shaar*, it is possible that the petitioners could have obtained a timely resolution of their reopening efforts. Under the BIA's current interpretation, however, even if the aliens were able to file their motions to reopen immediately and even if they received the maximum voluntary departure period of 60 days, the BIA would still, ordinarily, not be able to render its decision before the expiration of that period. *See supra* p. 754.

Finally, as a matter of practice, the voluntary departure periods that were initially granted were much more generous pre-IIRIRA. For example, aliens frequently used to receive many months, or even a number of years, within which to voluntarily depart, *see supra* p. 755, but now routinely receive

---

[19]*Shaar* repeatedly stressed as a rationale for its decision that the aliens made "no effort" to seek a further extension of their departure time, although such extensions were permitted pre-IIRIRA. *Id.* at 955, 958.

only 30 days, half of the statutorily permissible period. Discretionary extensions could, in the past, alleviate the problems created by any grant of a brief period for voluntary departure, but now the Justice Department has interpreted 8 U.S.C. § 1229c as establishing an absolute limit on the time that can be granted. 8 C.F.R. § 1240.26(f) (2004) ("In no event can the total period of time, including any extension, exceed 120 days or 60 days as set forth in section 240B of the Act."). Today's aliens can no longer benefit from the practice of granting reasonable extensions that could accommodate the BIA's inability to resolve motions to reopen expeditiously. In fact, the current policy of the BIA appears to be not to grant any extensions at all. Charles Gordon, Stanley Mailman, & Stephen Yale-Loehr, *Immigration Law and Procedure* § 3.05[7][d] (2004). ("Under present practice the Board does not consider requests to extend time for voluntary departure."). The BIA's refusal to grant sufficient periods of time for voluntary departure to allow it to decide timely filed motions to reopen and thus to reconcile the two statutory provisions is especially perplexing because the BIA has for more than a quarter-century extended the voluntary departure period in the appellate context. *See, e.g.*, *Matter of Chouliaris*, 16 I. & N. Dec. 168 (BIA 1977) (tolling voluntary departure period automatically pending BIA appeal from the immigration judge's decision and reinstating a voluntary departure period after appeal decision); *Matter of Villegas Aguirre*, 13 I. & N. Dec. 139 (BIA 1969) (holding that an appeal tolls the running of the voluntary departure period).

**[4]** Because Congress now authorizes an alien to file a motion to reopen within 90 days and has sharply reduced the time period for voluntary departure and because the two statutory provisions currently contain potentially conflicting terms, *Shaar* does not control our decision here. Rather, we must interpret the new IIRIRA provisions in the first instance.

## 2.   Statutes Are Interpreted As A Whole

**[5]** It is an established canon of construction that, when interpreting statutes, courts are generally obligated to look at the statute as a whole. *See, e.g.*, William N. Eskridge, Jr. & Phillip P. Frickey, *Legislation: Statutes and the Creation of Public Policy* 645 (1988) (describing the "Whole Act Rule"). "When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature*." Kokoszka v. Belford,* 417 U.S. 642, 650 (1974) (citation omitted). Under this statutory approach*,* which prudently interprets a statute as if all of its provisions have meaning, the statutory interpretation of the motion to reopen and voluntary departure provisions must be such that both provisions have force. *See* Eskridge & Frickey*, Legislation* at 646 ("The key to the whole act approach is, therefore, that all provisions and other features of the enactment must be given force, and provisions must be interpreted so as not to derogate from the force of other provisions and features of the whole statute.")*.* The BIA's interpretation, however, deprives the motion to reopen provision of meaning by eliminating the availability of such motions to those granted voluntary departure. An approach more consistent with the statute as a whole is to toll the voluntary departure period when an alien, prior to the expiration of his voluntary departure period, files a timely motion to reopen, at least when he requests a stay of removal.[20] Such an interpretation

---

[20]Our ability to toll the voluntary departure period is predicated on the fact that the Azartes filed their motion to reopen before their period for voluntary departure elapsed. *See Desta v. Ashcroft*, 365 F.3d 741 (9th Cir. 2004) (staying the voluntary departure period when it had not yet expired) *El Himri v. Ashcroft*, 344 F.3d 1261, 1262 (9th Cir. 2003) (same); *see also Garcia v. Ashcroft*, 368 F.3d 1157, 1159 (9th Cir. 2004) (holding that the voluntary departure period could not be stayed when the motion was filed after it had expired); *Gonzalez de Martinez*, 374 F.3d at 763 (holding that the BIA properly denied a motion to reopen when it was filed *after* the voluntary departure period had expired) (emphasis added); *Zazueta-Carrillo,* 322 F.3d at 1174 (same).

would effectuate both statutory provisions. IJs and the BIA could still grant voluntary departure periods of up to 60 days only, but, then, if that period were tolled, they would retain the authority Congress intended: to determine one non-frivolous motion to reopen.

## 3. No Absurd Interpretations

**[6]** Another traditional canon of statutory construction that necessitates tolling the voluntary departure period is that we must avoid interpretations that would produce absurd results. *See, e.g.*, *United States v. Wilson*, 503 U.S. 329, 334 (1992); *Ma v. Ashcroft*, 361 F.3d 553, 559 (9th Cir. 2004) (rejecting and affording no deference to a legal interpretation by the BIA that "contravenes the statute and leads to absurd and wholly unacceptable results"). We find the notion nonsensical that Congress would have allowed aliens subject to voluntary departure to file motions to reopen but would have simultaneously precluded the BIA from issuing decisions on those motions. Put another way, we find it absurd to conclude that Congress "intended to allow motions to reopen to be filed but not heard." *Shaar*, 141 F.3d at 960 (Browning, J., dissenting).

---

As the Azartes requested a stay of removal, we need not reach the question whether filing a motion to reopen automatically tolls the voluntary departure period, although automatic tolling would be consistent with the legislative scheme. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10321, 10325-26 (March 6, 1997) (interim rule).

Interpreting a request for a stay of removal as including a request to toll the voluntary departure period is consistent with *Desta v. Ashcroft*. 365 F.3d 741, 749 (9th Cir. 2004) (construing a stay of removal request pending our review as including a request for a stay of voluntary departure when the request was filed within the voluntary departure period). In this context, "staying" and "tolling" the voluntary departure period have the same meaning, and we and the BIA have both used the terms interchangeably with regard to the voluntary departure period.

That the BIA's interpretation of the statute is patently inconsistent with the statutory purpose is further demonstrated by the fact that voluntary departure and motions to reopen both are the subject of a long, uninterrupted, historic practice in immigration law. *See* Part III.B. We find absurd the proposition that Congress, while expressly codifying the tradition of motions to reopen, intended *sub silentio* to preclude their availability in a significant number of cases, likely a substantial majority. The most straightforward way of avoiding this absurdity is to toll the voluntary departure period pending the BIA's decision, as the Justice Department considered doing by express provision when it adopted its interim rule.[21]

### 4. *Construction in Favor of Aliens*

**[7]** Finally, it is a well-established canon of construction that "deportation statutes should be construed in favor of the alien." *Kwai Fun Wong v. United States*, 373 F.3d 952, 962 (9th Cir. 2004); *see also INS v. St. Cyr,* 533 U.S. 289, 320 (2001) (applying "the longstanding principle" of interpreting deportation statutes in favor of the alien) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987)); *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1141 (9th Cir. 2002). The application of this canon is clear in this case. Preventing aliens from receiving decisions on their motions to reopen would eliminate all possibility of redress if their circumstances changed. If Congress desired such a draconian result, we are confident it would have said so.

---

[21]The interim rule promulgated by the Department of Justice has never been replaced by a final one, which would now be adopted by the Department of Homeland Security. When promulgating the interim rule, the Justice Department explicitly stated that its rule did not resolve how motions to reopen and voluntary departure periods should be construed together; it suggested that tolling the voluntary departure period was one logical resolution, but avoided making a regulatory decision on the issue until the adoption of a final rule. *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312, 10,325-26 (March 6, 1997) (interim rule).

## IV. CONCLUSION

**[8]** To avoid creating an incompatibility in the statutory scheme, to implement a workable procedure for motions to reopen in cases in which aliens are granted voluntary departure, and to effectuate the purposes of the two statutory provisions, we hold that in cases in which a motion to reopen is filed within the voluntary departure period and a stay of removal or voluntary departure is requested, the voluntary departure period is tolled during the period the BIA is considering the motion. Such an interpretation is the most consistent with IIRIRA's legislative scheme because, unlike the BIA's interpretation, it gives effect to both 8 U.S.C. § 1229a(c)(6)(A) (2004) and 8 U.S.C. § 1229c(a)(1) (2004). Therefore the petition for review is granted and the Azartes' motion to reopen is remanded to the BIA with instructions to consider it on the merits.

**PETITION GRANTED.**