[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-15237

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2006
THOMAS K. KAHN
CLERK

Agency No. A76-444-430

MILDRED CHIKODILI UGOKWE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 28, 2006)**

Before ANDERSON, BARKETT and BOWMAN[*], Circuit Judges.

BARKETT, Circuit Judge:

---

[*] Honorable Pasco M. Bowman, II, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Mildred Chikodili Ugokwe petitions for review of an order by the Board of Immigration Appeals ("BIA") denying her motion to reopen removal proceedings. She argues that both the immigration judge ("IJ") and the BIA erred by denying her timely filed motion to reopen, without reaching the merits of that motion, based solely on her failure to depart during the time allowed for voluntary departure. She claims the BIA's determination relied on legal authority that has since been superceded by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, div. C., 110 Stat. 3009 ("IIRIRA").

BACKGROUND

Mildred Ugokwe is a citizen of Nigeria who was admitted to the United States as a nonimmigrant visitor on February 3, 1997. On August 28, 2003, the Department of Homeland Security issued a Notice to Appear, alleging that Ugokwe was subject to removal from the United States for having overstayed her visa, pursuant to the Immigration and Naturalization Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227 (a)(1)(B). The Department of Homeland Security further alleged that Ugokwe was removable as an alien who, at the time of admission into the United States, was inadmissible under existing law for want of a valid entry document, pursuant to INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A).

At a hearing on April 30, 2004, the IJ sustained the first allegation of removal, and granted Ugokwe's application for voluntary departure, ordering her to leave the country by August 30, 2004.[1]  On July 28, 2004, still in the voluntary departure period, Ugokwe filed a timely motion to reopen her proceedings and a motion to stay the order of voluntary departure based on changed circumstances, namely her intervening marriage to a United States citizen.  The IJ did not rule on Ugokwe's motion until after the voluntary departure deadline had passed, and then denied Ugokwe's motion to reopen based on (1) her failure to depart during the voluntary departure period, and (2) the fact that under the rule established in Matter of Shaar, 21 I & N Dec. 541 (BIA 1996), aff'd sub. nom. Shaar v. INS, 141 F.3d 953 (9th Cir. 1998), the filing of a motion to reopen during the voluntary departure period "does not toll or extend the voluntary departure period."  Ugokwe appealed the IJ's decision to the BIA, which adopted and affirmed the decision of the IJ. This petition for review ensued.

## DISCUSSION

Ugokwe argues that both the IJ and BIA erred by denying her timely filed motion to reopen based on changed circumstances solely on the grounds that she

---

[1] Under 8 U.S.C. § 1229c(a)(1), "[t]he Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense," subject to certain conditions in that statute.

had failed to depart during the voluntary departure period. Specifically, she argues that both the IJ and the BIA improperly relied on legal authority that has been superceded by IIRIRA, and that her failure to depart was based on the IJ's failure to address her petition until the period for voluntary departure had passed.[2] The IJ found that filing a motion to reopen during the pendency of a voluntary departure period does not toll or extend the voluntary departure period, relying on Matter of Shaar, 21 I & N Dec. 541 (BIA 1996), and ultimately held that:

> After reviewing the evidence, the Court finds that Respondent did not depart when required. Therefore, she is ineligible for relief until ten years after the date of her scheduled departure. INA § 240(b)(d). At the conclusion of proceedings against Respondent, the Court granted her one hundred twenty days to depart, the maximum amount of time allowed. INA § 240(b)(b)(2); 8 C.F.R. § 1240.26(e)(2004). The Court informed Respondent of the penalties for failure to depart and the forms of relief for which she would be precluded is she violated the order of voluntary departure. INA § 240B(d). Because Respondent did not leave within the requisite period, and because she was informed of the penalties that would arise from such action, she is barred from adjusting his [sic] status for ten years from the date of her scheduled departure.

In adopting the IJ's decision, the BIA noted that this case was controlled by INA § 240B(d), 8 U.S.C. § 1229c(d), which details the civil penalties for failure to leave

---

[2] When the BIA "adopts the IJ's reasoning, [this Court] review[s] the IJ's decision as well" as the BIA's opinion. Najiar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA and IJ's decisions were based on a legal determination, our review is de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). We review factual determinations under the 'substantial evidence' test – a decision by the IJ or the BIA will be sustained "if its supported by reasonable, substantial, and probative evidence on the record considered as a whole." Antipova v. U.S. Att'y Gen., 392 F.3d 1259, 1261 (11th Cir. 2004).

during the voluntary departure period,[3] and 8 C.F.R. § 1240.26(e), the federal

regulation that sets out the amount of time an IJ may grant for voluntary departure.[4]

The BIA, however, did not address the statutory provisions relating to

motions to reopen. It should have done so because this case implicates not only

Ugokwe's voluntary departure, but the interaction between rules pertaining to

voluntary departure and Ugokwe's right under the INA to file a motion to reopen.

In IIRIRA, Congress altered the statutory framework governing both of these

subjects.[5] Under the INA as it exists today, Ugokwe is statutorily permitted to file

---

[3] 8 U.S.C. § 1229c(d) reads, in pertinent part:
(d) Civil penalty for failure to depart.
(1) In general.
Subject to paragraph (2), if an alien is permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified, the alien--
> (A) shall be subject to a civil penalty of not less than $ 1,000 and not more than $5,000; and
> (B) shall be ineligible, for a period of 10 years, to receive any further relief under this section and sections 1229b, 1255, 1258, and 1259 of this title.
. . .
(3) Notice of penalties.
The order permitting an alien to depart voluntarily shall inform the alien of the penalties under this subsection.

[4] 8 C.F.R. § 1240.26(e) states:
(e) Periods of time. If voluntary departure is granted prior to the completion of removal proceedings, the immigration judge may grant a period not to exceed 120 days. If voluntary departure is granted at the conclusion of proceedings, the immigration judge may grant a period not to exceed 60 days.

[5] IIRIRA specifically excised statutory language in the INA that stated that "any alien allowed to depart voluntarily . . . who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for . . . relief . . . ." INA § 242B(e)(2)(A), 8 U.S.C. § 1252b(e)(2)(A) (1994), repealed by IIRIRA § (emphasis added).

one motion to reopen proceedings, but this motion must be filed within 90 days of the order of removal.[6] INA § 240(c)(7), 8 U.S.C. § 1229a(c)(7). Under 8 C.F.R. § 1003.2(d), however, if Ugokwe were to leave the United States for any reason – including voluntary departure – while a motion to reopen was pending, that departure would constitute a withdrawal of the motion to reopen.[7] The post-IIRIRA provision on voluntary departure further states that "permission to depart

---

[6] 8 U.S.C. § 1229a(c)(7) states in pertinent part:
(7) Motions to reopen.
(A) In general
An alien may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv).
(B) Contents
The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material.
(C) Deadline
    (i) In general
    Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.
. . .
The filing of a motion to reopen under this clause shall only stay the removal of a qualified alien . . . pending the final disposition of the motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien.

[7] 8 C.F.R. § 1003.2(d) states, in pertinent part, as follows:
(d) Departure, deportation, or removal. A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

6

voluntarily . . . shall not be valid for a period exceeding 120 days." 8 U.S.C. § 1229c(a)(2)(A).

The question before us is therefore whether, under IIRIRA, the BIA's failure to rule on a petitioner's motion to reopen filed prior to the expiration of her voluntary departure period authorizes the BIA to decline to rule on the merits of the motion to reopen. This issue of first impression in our Circuit requires an examination of the interaction of the voluntary departure and motion to reopen statutes. We note that four of our sister circuits have previously addressed this issue – and that three of them have held that the BIA's refusal to rule on the merits of the motion to reopen impermissibly "deprives the motion to reopen provision of meaning by eliminating the availability of such motions to those granted voluntary departures." Azarte v. Ashcroft, 394 F.3d 1278, 1288 (9th Cir. 2005).

In Azarte, the first decision to address this issue, the IJ denied cancellation of removal but granted respondents' motion for voluntary departure. Id. at 1280. The BIA affirmed, and permitted respondents to remain in the country until May 22, 2002. Seven days prior to the expiration of the voluntary departure period, the respondents filed a motion to reopen based on changed circumstances. Id. at 1280-81. The BIA did not act on the motions to reopen prior to the expiration of the voluntary departure period and then "concluded that, because the petitioners failed

7

to depart voluntarily as specified, they were ineligible for cancellation of removal." Id. at 1281.

The Ninth Circuit surveyed the relevant statutory provisions addressing motions to reopen, and noted that they did not "establish a time by which the BIA must make its decision regarding a motion to reopen." Id. at 1284. With regard to voluntary departure, the court then observed that "IIRIRA drastically limited the time allowed for voluntary departure." Id. at 1285. Because of the changes IIRIRA created, the Azarte court perceived that Matter of Shaar, 21 I & N Dec. 541, could no longer "control [its] decision in this case," because "the rationales that underlay Shaar are no longer applicable after IIRIRA." Azarte, 394 F.3d at 1286 ("Shaar's statutory interpretation concerned only a single statutory provision–a provision relating to voluntary departure–which has now been superceded.").

Azarte noted that "the statutory interpretation of the motion to reopen and voluntary departure provisions must be such that both provisions have force." Id. at 1288. The BIA's interpretation would deprive respondents in Azarte of their statutory right to have a motion to reopen considered, and so the court concluded that

> An approach more consistent with the statute as a whole is to toll the voluntary departure period when an alien, prior to the expiration of his voluntary departure period, files a timely motion to reopen . . . . Such an interpretation would effectuate both statutory provisions. IJs and the BIA

8

could still grant voluntary departure periods up to 60 days only, but, then, if that period were tolled, they would retain the authority Congress intended: to determine one non-frivolous motion to reopen.

Id. The Azarte court also relied on a number of other canons of statutory construction – notably avoiding absurd results and construing deportation statutes in favor of aliens – to reach its conclusion that respondents must be afforded an opportunity to receive a ruling on the merits of their motion to reopen. Accordingly, the court remanded the motion to reopen to the BIA with instructions to consider it on the merits. Id. at 1289.

Since Azarte, three other courts have considered this issue. In Sidikhouya v. Gonzales, 407 F.3d 950 (8th Cir. 2005), the Eighth Circuit adopted the reasoning of Azarte in a situation where Sidikhouya filed a motion to reopen the day before the expiration of his voluntary departure period. Id. at 951. The court in Sidikhouya likewise noted the absurdity of the BIA's interpretation – which is the same position taken by the BIA here:

> Under current BIA interpretations, if an alien departs within his voluntary departure period, he forfeits any motion to reopen he may have filed because he is no longer within the United States. If an alien fails to depart within his voluntary departure period, he also forfeits any pending motion to reopen because he has violated his voluntary departure period and thus is no longer eligible to receive the underlying relief.

Id. at 952 (citations omitted). Consequently, the Eighth Circuit agreed with Azarte that "Sidikhouya must be afforded an opportunity to receive a ruling on the merits

9

of his timely filed motion to reopen," and held that the BIA "abused its discretion in denying Sidikhouya's motion to reopen solely on the ground that he had overstayed his voluntary departure period." Id. Similarly, in Kanivets v. Gonzales, 424 F.3d 330 (3d Cir. 2005), the Third Circuit held that when a petitioner timely filed a motion to reopen within his voluntary departure period, "the BIA should decide his motion for reopening on the merits." Id. at 336.

The Fifth Circuit, by contrast, is the sole court to have adopted the contrary position. In Banda-Ortiz v. Gonzales, 445 F.3d 387 (5th Cir. 2006), the court held that any tolling of the period for voluntary departure would be contrary to 8 U.S.C. § 1229c(b)(2)'s mandate that "[p]ermission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days," and, furthermore, that "[t]he BIA has reasonably interpreted the governing statutes in light of the purposes of the voluntary departure scheme to permit the filing and resolution of a motion to reopen, so long as it does not interfere with the agreed upon voluntary departure date or the Government's interest in the finality of an alien's voluntary departure." Id. at 391. In his dissent, Judge Smith noted that the majority opinion was "searching for Congress's intent almost exclusively in the set of provisions governing voluntary departure to the detriment of the provisions concerning motions to reopen." Id. He further emphasized that the language of 8 U.S.C. §

10

1229a(c)(7), the statutory provision on motions to reopen, is "intentionally broad; it does not make exceptions for aliens subject to voluntary departure . . . ." Id. at 395.

We are persuaded by the rationale of Judge Smith and the Third, Eighth, and Ninth Circuits. Because Ugokwe's case clearly involves both the voluntary departure and motion to reopen statutes, we cannot, as did the Fifth Circuit, exclusively focus on the voluntary departure standards and ignore the motion to reopen provisions. We agree with the Ninth Circuit that Matter of Shaar, 21 I & N Dec. 541, cannot govern our analysis here. Matter of Shaar concerned a statutory provision that was repealed by IIRIRA,[8] and did not discuss any statutory purpose to allow motions to reopen – as prior to IIRIRA there was no statutory authorization for motions to reopen. See Azarte, 394 F.3d at 1286.

To accept the BIA's position here would deprive a petitioner in Ugokwe's circumstance of all of the statutory rights granted to her by Congress. If the alien leaves during her voluntary departure period, she forfeits her motion to reopen under 8 C.F.R. § 1003.2(d). Yet, if she stays she would have then violated the voluntary departure period and therefore would be ineligible to obtain the relief

_____

[8] The BIA framed the issue in Matter of Shaar as follows: "[t]he issue in this case is whether the expiration of the period of voluntary departure while a motion to reopen is pending renders a respondent statutorily ineligible for suspension of deportation pursuant to section 242B(e)(2)(A) of the [INA] if the notice requirements of section 242B(e)(2)(B) of the [INA] have been satisfied." Matter of Shaar, 21 I & N Dec. 541. As we noted above, however, section 242B(e)(2)(B) of the INA, 8 U.S.C. § 1252b(e)(2)(A), was specifically repealed by IIRIRA. See 8 U.S.C. § 1252b(e)(2)(A) (1994), repealed by IIRIRA § 304.

11

sought in her motion to reopen. The BIA's interpretation creates an exception to Congress's clearly stated language in 8 U.S.C. § 1229a(c)(7), which grants aliens the right to file one motion to reopen, with no mention of an exception for those in a period of voluntary departure.

Accordingly, we agree with Ugokwe that the BIA erred in declining to rule on her motion to reopen solely because of her failure to depart during her voluntary departure period. We adopt the rule established in Azarte that the timely filing of a motion to reopen tolls the period of voluntary departure pending the resolution of the motion to reopen.[9] We therefore grant Ugokwe's petition for review and remand her motion to reopen to the BIA with instructions to consider it on the merits.

**PETITION GRANTED.**

---

[9] We have no occasion today to address whether tolling would be appropriate if the motion to reopen were frivolous. The instant motion is clearly not frivolous, and the instant case clearly does not present a situation of an abusive tactic aiming simply to gain additional time in the United States. We leave such a case to another day.

12