84 F.3d 1180
 96 Cal. Daily Op. Serv. 3785, 96 Daily Journal
D.A.R. 6140
UNITED STATES of America, Plaintiff-Appellee,
v.
Linda Agbayani TAGALICUD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francisco Agustin TAGALICUD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Kauilani HOSE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tarcila Tagalicud HOSE, Defendant-Appellant.
 Nos. 95-10201 to 95-10204.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 12, 1996.*
Decided May 29, 1996.
 
 Donna M. Gray, Assistant Federal Public Defender, Honolulu, Hawaii, for defendant-appellant Linda Agbayani Tagalicud.
 Stephen M. Shaw, Honolulu, Hawaii, for defendant-appellant Francisco Agustin Tagalicud.
 Elizabeth Fisher (Argued), and Carmen DiAmore-Siah (On the Briefs), Honolulu, Hawaii, for defendant-appellant Michael Kauilani Hose.
 Johnaaron Murphy Jones, Honolulu, Hawaii, for defendant-appellant Tarcila Tagalicud Hose.
 Omer G. Poirier, Assistant United States Attorney, Honolulu, Hawaii, for plaintiff-appellee.
 Appeals from the United States District Court for the District of Hawaii, Manuel L. Real, District Judge, Presiding. D.C. Nos. CR-93-02175-01-MLR--CR-93-02175-04-MLR.
 Before THOMPSON, KLEINFELD and TASHIMA, Circuit Judges.
 KLEINFELD, Circuit Judge:
 
 INTRODUCTION
 
 1
 The essential question raised by this case is how a judge must instruct in a multi-defendant case in which the defendants are charged with similar marriage fraud offenses.
 
 FACTS
 
 2
 Two Hawaiians, Linda Agbayani and her 18 year-old son Michael Hose, married two individuals in the Philippines, Francisco Tagalicud and his sister Tarcila Tagalicud. The government presented evidence that these marriages were entered into after minimal acquaintance, so that the Hawaiians could get money and the Filipinos visas. The spouses never actually met before the Hawaiians' brief trip to the Philippines, where they were married. When the 18 year-old boy's friends asked him why he was married, he said "oh, it's not like for real," it's "for money."
 
 
 3
 On the other hand, the four defendants presented evidence that they really did mean to be married. They showed the jury a video tape of the two-couple marriage ceremony. It appears to be in church, with a priest officiating, and a substantial number of family members, friends, and acquaintances watching. Then the video tape moves to a reception, with ordinary wedding customs and a large crowd eating and drinking. The defendants also presented letters they had written each other during the six months before the wedding. After the wedding, the Filipino wife of the 18 year-old boy had moved for a temporary restraining order against him in Hawaii, claiming that he hit her, which sounds more consistent with spouses living together, albeit unhappily, than with a commercial transaction, money for marriage license and visa, after which the parties go their separate way.
 
 
 4
 The government presented evidence showing that after the spouses had all arrived in the United States, the mother and her 18 year-old son lived together, and the brother and sister lived together at their aunt's house. In addition, the government presented the 18-year-boy's surreptitiously taped remarks above, and another in which he said "one year before you go, you guys gotta write letters to each other .... and back and forth and stuff. Then when you go to the immigration office you show 'em all the letters that you guys fell in love and shit."
 
 
 5
 All four of the spouses were indicted for conspiracy to defraud the Immigration and Naturalization Service through sham marriages and false statements in immigration documents. The alleged false statements were that the 18 year-old lived at a separate address from his mother, and that his mother was employed and had no dependents. In addition, the individuals were charged with entering into sham marriages in order to evade the immigration laws.
 
 ANALYSIS
 
 6
 All four defendants were convicted, and appeal. Though numerous grounds are raised, our reversal on one of the grounds obviates the need to deal with most of the others.
 
 
 7
 A. Sufficiency of Evidence.
 
 
 8
 We first take up the sufficiency of evidence challenges, because they would lead to reversal without retrial. The test of sufficiency is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Vgeri, 51 F.3d 876, 879 (9th Cir.1995) (quotations omitted).
 
 
 9
 Michael Kauilani Hose argues that the evidence was insufficient to establish the requisite mens rea for conspiracy. We disagree. The jury could have concluded that he lied about his address, and lied about taking money for the marriage, in order to cover up immigration fraud. The evidence was sufficient. The jury could have inferred that he would not have lied, had he not had the requisite intention to commit the underlying offense.
 
 
 10
 Tarcila Tagalicud Hose argues that she was not adequately identified in court. Her own testimony in court, however, identified her as a participant in the marriage, so the jury had evidence from which it could conclude that she was the defendant charged. Her sufficiency challenge also fails.
 
 
 11
 B. Jury Instructions.
 
 
 12
 Reversal is necessary because of error in jury instructions. The indictment charged the defendants as follows:
 
 Linda Agbayani Tagalicud
 Count I--Conspiracy, 18 U.S.C. § 371
 
 13
 Count II--Marriage Fraud, 8 U.S.C. § 1325(b)
 
 
 14
 Count IV--False Immigration Document, 18 U.S.C. § 1546[1]
 
 
 15
 Count VI--False Immigration Document, 18 U.S.C. § 1546
 
 Francisco Agustin Tagalicud
 Count I--Conspiracy, 18 U.S.C. § 371
 
 16
 Count II--Marriage Fraud, 8 U.S.C. § 1325(b)
 
 Michael Kauilani Hose
 Count I--Conspiracy, 18 U.S.C. § 371
 
 17
 Count III--Marriage Fraud, 8 U.S.C. § 1325(b)
 
 
 18
 Count V--False Immigration Document, 18 U.S.C. § 1546
 
 Tarcila Tagalicud Hose
 Count I--Conspiracy, 18 U.S.C. § 371
 
 19
 Count III--Marriage Fraud, 8 U.S.C. § 1325(b)
 
 
 20
 The district judge explained the elements of conspiracy in terms of "all four defendants." No challenge is made to the conspiracy instruction itself, although the instructions are challenged as a whole.
 
 
 21
 For the remaining counts, the district judge did not sort out the charges by defendant, and did not explain what had to be proved against each defendant for each count. Instead, the judge described all of the crimes in terms of the charges against Linda Agbayani Tagalicud. The jury was not given any instructions along the lines of "in order to find Francisco Agustin Tagalicud guilty of x, you must find a, b and c." The jury was given a copy of the indictment, oral instructions telling them what had to be proved against Linda Tagalicud on each count with which she was charged, and no express instructions at all, except for the conspiracy instruction, relating to the other three defendants. The judge did not explain which parts of the instructions relating to Linda Tagalicud applied to which charges against any of the other three defendants.
 
 
 22
 Appellants do not challenge the correctness of the instructions as to Linda Tagalicud. Their argument is that the court erred by instructing only as to her, and leaving it to the jury to infer what had to be proved against each of the other defendants.
 
 
 23
 After the judge gave his oral instructions, but before the jury retired to deliberate, the lawyers for the government and defendants objected to the court's failure to instruct expressly about the defendants other than Linda Agbayani Tagalicud. They pointed out the possibility of jury mistake. The judge decided not to give additional instructions, because he had instructed that "the cases against each defendant should be considered separately and individually."
 
 
 24
 I. The Defendants Other Than Linda Tagalicud.
 
 
 25
 As to Francisco Agustin Tagalicud, Michael Kauilani Hose, and Tarcila Tagalicud Hose, reversal is required, because there were no instructions telling the jury what it had to find in order to convict them. We review de novo whether a jury instruction misstates elements of a crime. United States v. Stein, 37 F.3d 1407, 1409 (9th Cir.1994). Arguably this is an issue of "formulation of jury instructions," which we review for abuse of discretion, to determine " 'whether or not the instructions taken as a whole were misleading or represented a statement inadequate to guide the jury's deliberations.' " Powell, 955 F.2d at 1210 (quoting United States v. Kessi, 868 F.2d 1097, 1101 (9th Cir.1989)). We need not decide whether the instructions are more properly viewed as failing to state the elements of the crimes against the three defendants other than Linda Agbayani Tagalicud, or as a formulation which stated the elements but did not expressly state what had to be proved for which charges against which defendants. Either way, reversal is required. "Failing to instruct jurors about an essential element of a crime is constitutional error because it lets them convict without finding the defendant guilty of that element." United States v. Caldwell, 989 F.2d 1056, 1060 (9th Cir.1993). "The jury must receive clear instruction as to what the unlawful conduct is that the government must prove." United States v. Powell, 955 F.2d 1206, 1213 (9th Cir.1991).
 
 
 26
 The government argues that the instructions did not misstate or omit any elements, because each of the crimes with which the other three defendants were charged contained the same elements as one of the crimes with which Linda Tagalicud was charged. Thus, for example, although none of the other three defendants was the subject of an instruction about marriage fraud, Linda Tagalicud was, so the jury could have inferred that for the government to convict any of them, it would have to prove the same things that it had to prove against Linda Tagalicud. Likewise, according to the government, the jury could have inferred what had to be proved on each of the other charges against each of the other defendants.
 
 
 27
 It is extremely difficult to figure out what the government had to prove on each count against each defendant without going through the indictment carefully, preparing a chart as we did to prepare this opinion, and then translating the appropriate elements from the Linda Tagalicud instructions to the factually different but legally parallel charges against the other three defendants. That intellectual exercise is one which the court should have performed for the jury. The challenge was compounded for the jury, because the instructions were given only once, orally, and no copy of them was sent back to the jury room so that the jurors could parse them. Because of the complexity and risk of error and misunderstanding, the court's formulation of the instructions for Linda Agbayani Tagalicud alone was "inadequate to guide the jury's deliberations." Id.
 
 
 28
 The district judge was advised of the defect, but thought it was cured by the instruction that the "cases against each defendant should be considered separately and individually. The fact that you may find one of the defendants guilty or not guilty of any of the offenses charged should not control your verdict as to any other offense, or any other defendant." This instruction did not cure the defect, because the jury was not told how to consider the case against each defendant separately and individually.
 
 
 29
 We need not decide whether the defect in the jury instructions was structural, see United States v. Gaudin, 28 F.3d 943, 952 (9th Cir.1994), aff'd, --- U.S. ----, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), or whether the error is subject to harmless error analysis, see United States v. Olano, 507 U.S. 725, 734-36, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993). The error was not harmless. The charges are complex, the instructions were confusing, and we cannot be confident that the jury understood its task. In examining the instructions ourselves, we note clear possibilities of jury confusion.
 
 
 30
 For example, Count II of the indictment charges Linda Agbayani Tagalicud and Francisco Agustin Tagalicud with having "knowingly entered into a marriage, without intending to live together as husband and wife, for the purpose of evading provisions of the United States immigration laws," in violation of 8 U.S.C. § 1325(b). The jury instruction regarding this count says "[d]efendant Linda Agbayani Tagalicud is charged in Count Two of the indictment with knowingly entering into a marriage with Francisco ago [sic] Tagalicud, without intending to live together with him as husband and wife, for the purpose of evading provisions of the United States immigration laws." It then explains that "[i]n order to find a person guilty of marriage fraud the government must prove beyond a reasonable doubt that a person knowingly entered into a marriage without intending to live together as husband and wife, for the purpose of evading the immigration laws of the United States."
 
 
 31
 This may well have confused the jury with respect to Francisco Agustin Tagalicud. The statute makes it a felony if a person "knowingly enters into a marriage for the purpose of evading any provision of the immigration laws." 8 U.S.C. § 1325(b). We have held that a marriage was a sham "if the bride and groom did not intend to establish a life together at the time they were married." Bark v. INS, 511 F.2d 1200, 1201 (9th Cir.1975). The evidence allowed for the possibility that Linda married Francisco without intending to establish a life together, but that he married her intending to live with her as her husband. The evidence at trial focused largely on the motivations for the marriages, money for Linda Tagalicud and Michael Hose, and visas for Francisco Tagalicud and Tarcila Hose. But the motivations are at most evidence of intent, and do not themselves make the marriages shams. Marriages for money or other ulterior gain are as ancient as mankind, yet may still be genuine, and marriage fraud may be committed by one party to the marriage, or a person who arranged the marriage, yet the other spouse may genuinely intend to marry. See Genesis 29:18-30 (Jacob honestly married, twice, but Laban had fraudulently caused him to marry Leah and thereby extorted an additional seven years of work). The ulterior motive of financial benefit or immigration benefit does not make the marriage a fraud, though it may be evidence that the marriage is fraudulent.
 
 
 32
 The instruction did not say whether Francisco could be innocent if Linda was guilty, and incorrectly implied that if the marriage was a sham, it was a sham for both. Likewise, the jury might have thought, based on Michael's surreptitiously taped statement to his friend, that he did not genuinely intend to marry Tarcila, just to take her $10,000 and divorce her once he got her into the country, but that Tarcila intended to "establish a life together at the time they were married" in gratitude for a visa. If the jury tried to apply the Linda Tagalicud instruction, it could incorrectly infer that if the marriage were a sham as to Michael, then it was a sham as to Tarcila. For that matter, the jury was never told what it had to find in order to convict Michael.
 
 
 33
 II. Linda Tagalicud.
 
 
 34
 The defectiveness of the jury instructions is different as to Linda Tagalicud. She does not claim that the elements of the crimes were misstated or omitted as to herself. Rather, she argues that the effect of the failure of the court to instruct the jury as to the other three defendants unfairly singled her out.
 
 
 35
 We are persuaded that she is correct. As stated above, the judge did not tell the jury how it could consider the charges against other defendants separately from the charges against Linda Agbayani Tagalicud. In at least two ways, this error made the instructions taken as a whole misleading or inadequate to guide the jury's deliberations. See Powell, 955 F.2d at 1210.
 
 
 36
 One possibility is that describing all the crimes in terms of Linda Tagalicud's conduct would establish her in the jury's eyes as the lead defendant. Just as undue emphasis of particular testimony should not be permitted during jury deliberations, see United States v. Sacco, 869 F.2d 499, 501 (9th Cir.1989), and United States v. Binder, 769 F.2d 595, 600 (9th Cir.1985), so the jury instructions should not give undue emphasis to the conduct of one of several defendants, see United States v. Andrus, 775 F.2d 825, 851 (7th Cir.1985)("a trial court should not, in instructing the jury, unduly emphasize the role a defendant has allegedly had in a multidefendant trial"); United States v. Continental Group, Inc., 456 F.Supp. 704, 722 (E.D.Pa.1978), aff'd, 603 F.2d 444 (3d Cir.1979). The risk here is that the jury would infer that the court regarded Linda Tagalicud's conduct as the most meretricious, and would be more inclined to convict her than other defendants.
 
 
 37
 A second risk is that the jury would infer that conviction of Linda Tagalicud was a necessary condition to conviction of the others. Because the jury was not told how to determine whether the charges against any of the other defendants should be evaluated, and were instructed only as to Linda Tagalicud, it could infer that it could only convict other defendants if it convicted Linda Tagalicud. The jury might have thought that the two spouses from the Philippines, Francisco Agustin Tagalicud and Tarcila Tagalicud Hose, were guilty, but that the question was closer as to Linda Agbayani Tagalicud. The jury might have inferred, because the instructions singled out Linda Tagalicud, that it had to convict Linda Tagalicud in order to convict Francisco and Tarcila. Likewise, the jury might have thought Michael Hose was guilty, because of the secretly taped conversation which he told his friend that the marriage was for money and not "for real," but that the question was closer as to Linda Tagalicud. The jury might have thought from the way the instructions were written that it had to convict Linda Tagalicud in order to convict Michael Hose.
 
 CONCLUSION
 
 38
 As to all four appellants, the judgments are REVERSED and all cases are REMANDED.
 
 
 
 *
 95-10204 was submitted on the briefs. All other appeals were argued
 
 
 [1]
 Count IV was severed and dismissed without prejudice and so is not at issue in this appeal