**Rodolfo Monroy BARIA,**
**Plaintiff–Appellant,**

v.

**Janet RENO, Attorney General, United States Attorney General; Donald A. Radcliffe, District Director, Immigration & Naturalization Service, Defendants–Appellees.**

No. 98–16034.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 26, 1999.

Decided June 30, 1999.

George K. Noguchi, Honolulu, Hawaii, for the plaintiff-appellant.

Mary Reiko Osaka, United States Department of Justice, Honolulu, Hawaii, for the defendants-appellees.

Before: FARRIS, NOONAN and GRABER, Circuit Judges.

NOONAN, Circuit Judge:

Rodolfo Monroy Baria appeals the judgment of the district court affirming the decision of the Board of Immigration Appeals (the Board) to rescind his status as a lawful permanent resident. We affirm the judgment of the district court, publishing this opinion in order to clarify the relationship between a motion to reopen before the Board and the jurisdiction of the district court.

### FACTS AND PROCEEDINGS

Baria, a native and citizen of the Philippines and a traveling musician, entered the United States in June 1984 as a visitor authorized to remain until June 13, 1985. Two months after his arrival, he filed for divorce in Nevada. In December 1984 he began living in Hawaii with a United States citizen, Bibiana Patoc. Two weeks after his divorce became final, he married her; it was a day after the expiration of his visitor's visa. On September 20, 1985 on Bibiana's application, his status was adjusted to that of a lawful permanent resident.

A little over a year later, in November 1986, the couple separated. Bibiana contacted the Immigration and Naturalization Service (the Service). On January 28, 1988, the Service issued a notice of intent to rescind Baria's adjusted status because his marriage to a United States citizen was a sham not recognizable for immigration purposes. A rescission hearing was held before an immigration judge on December 12, 1988. The Service presented an affidavit in which Bibiana swore that Baria had married her to gain citizenship and considered himself still married to his first wife in the Philippines by whom he had three children; the affidavit was verified at trial by Bibiana, who appeared in person at the hearing. She also testified to a letter to Baria purportedly from his wife in the Philippines dated October 30, 1986, which thanked Baria for money he had sent her, referred to his present marriage as "fixed," expressed pleasure at the prospect of his returning to the Philippines for a vacation and stated, "I thought your marriage was for real down there because you delayed your vacation a few times. Now I trust you and I love you much." Bibiana testified that she was furious on discovering this letter and concluded that he was continuing his relations with his first wife. The Service rested its case.

Baria did not testify but was informally interrogated and did submit an affidavit in which he stated that he married Bibiana because they were in love and that only later did she become "domineering, possessive and childish" and life with her became unbearable; that she was now seeking vengeance; that he could not recognize as his wife's the blurred signature on the typed letter from the Philippines, but he had no reason to believe it was from her because he had never communicated with her. The immigration judge held that the government had not proved its case by clear and convincing evidence. The Service appealed. On August 25, 1993 the Board held that "the evidence clearly, unequivocally, and convincingly establishes that [Baria] married Bibiana Patoc, a United States citizen, for the sole purpose of evading the immigration laws." The Board considered significant the letter from the wife in the Philippines which it interpreted as showing that Baria had married Bibiana for immigration purposes. The Board noted that the immigration judge had found Bibiana credible; the Board characterized Baria's answers as "vague and evasive." It reversed the decision of the immigration judge and rescinded the grant of lawful permanent residence to Baria.

The Service began proceedings to deport Baria. On December 7, 1994 Baria was found deportable. Meanwhile, before the finding of deportability, Baria filed suit in the district court asking for a declaration that the order of the immigration judge be reinstated. On April 29, 1994 the district court granted summary judgment to the Service. Baria appealed to this court. On September 5, 1996 we held that the district court had properly limited its

review to the administrative record. We noted that Baria could present his new evidence in a motion to the Board to re-open. We reversed the district court be-cause it had proceeded to summary judg-ment without giving Baria the 10 days notice required by Federal Rule of Civil Procedure 56(c). The case was remanded. *Baria v. Reno,* 94 F.3d 1335 (9th Cir.1996).

On September 30, 1996 Baria filed a motion to reopen or to reconsider with the Board. In support of the motion he claimed ineffective assistance of counsel at the hearing before the immigration judge and before the Board. He stated that he had not testified because his counsel had been told by the immigration judge, after hearing from Bibiana, that the judge was going to rule in his favor. He submitted an affidavit by his son stating that the letter purportedly written by Baria's first wife was a fraud. As of the date of argu-ment before this court the Board had not decided the motion to reopen.

Back in the district court, a magistrate judge repeatedly continued status confer-ences regarding Baria's petition before that court. On December 1, 1997 the Ser-vice renewed its motion for summary judg-ment. After a second review of the admin-istrative record, and not considering the new evidence offered in support of the motion to reopen, the district court grant-ed this motion on April 30, 1998. Baria appeals.

*Jurisdiction.* The Service does not challenge the district court's determination that the Illegal Immigration Reform and Immigrant Responsibility Act (IIRAIRA), 8 U.S.C. § 1329 as amended in 1996 does not apply retroactively and that IIRAIRA, 8 U.S.C. § 1252(g) as amended in 1996 does not apply to a rescission proceeding.

■ Baria argues that the district court had no jurisdiction to consider the Ser-vice's deportation case when Baria had filed his motion to reopen the Board's or-der of rescission. He offers no statute, regulation or precedent in support of this position. The observation of this court in *Baria I,* 94 F.3d at 1340–41, that Baria "can still move the board to reopen or reconsider the matter" was in no way a ruling that the district court would lack jurisdiction if Baria did decide to avail himself of his administrative options.

■ Opposing Baria's argument, the Service cites no statute but does invoke 8 C.F.R. § 3.2(f). This regulation provides that, with certain inapplicable exceptions, "the filing of a motion to reopen or a motion to reconsider shall not stay the execution of any decision made in the case." It might be objected that 8 C.F.R. § 3.2(f) is headed "Stay of Deportation" and for that reason does not cover a rescis-sion decision. Such a reading of the regu-lation would be too narrow. The rescis-sion decision is part of the deportation proceeding. A motion to reopen such a decision could have the effect of procedur-ally delaying deportation; the regulation is intended to forestall this possibility. *Cf. Stone v. INS,* 514 U.S. 386, 399, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). The regula-tion speaks to Baria's situation. His mo-tion to reopen does not "stay the execu-tion;" the Board's decision is final as far as the district court is concerned.

■ Summary Judgment. Baria ob-jects that the Service did not identify the portions of the transcript of the hearing on which it relied. The district court, howev-er, was free to consider the entire adminis-trative record and did so without prejudice to Baria. Baria argues that the Board's decision was not supported by substantial evidence. The case, as decided by the Board, turned on circumstantial evidence and credibility. The timing of Baria's sec-ond marriage, the day after his visa ex-pired, was highly suspicious. We do note that Baria did not testify as a witness, so it was error to rely, as the Board did, on a judgment as to his credibility. The au-thorship of the letter from the Philippines was not established. The competent evi-dence was Bibiana's affidavit and testimo-ny. If she were believed, there was sub-stantial evidence that Baria did not intend to establish a life with her when they

entered the marriage. *See United States v. Tagalicud*, 84 F.3d 1180, 1184–85 (9th Cir.1996). If Bibiana were believed, his case was sunk. We cannot say that the Board erred in believing Bibiana and so we cannot say that substantial evidence was lacking. We do not, of course, prejudice the case for reopening that Baria has presented to the Board; the new evidence, if believed, would shift the result.

**AFFIRMED.**