**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE JUAN MARTINEZ BARROSO,
                    *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                    *Respondent.*

No. 03-72552

Agency No.
A75-522-220

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 3, 2005—Pasadena, California

Filed November 18, 2005

Before: Donald P. Lay,* Stephen Reinhardt, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Reinhardt

---

*The Honorable Donald P. Lay, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

15399

**COUNSEL**

Ricardo Alberto Figueroa, Long Beach, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General; Robert M. Loeb, Attorney; Charles W. Scarborough, Attorney; Appellate Staff Civil Division, Department of Justice, Washington, D.C., for the respondent.

**OPINION**

REINHARDT, Circuit Judge:

Jose Juan Martinez Barroso ("Barroso") petitions this court for review of a Board of Immigration Appeals ("BIA") order denying his motion to reconsider its previous denial of his appeal. Barroso's motion to the BIA alleged ineffective assistance of counsel and the denial of Barroso's right to counsel of his choice. The BIA denied Barroso's ineffective assistance of counsel claim, but did not address his denial of counsel claim. In addition, the BIA denied Barroso relief because he had failed to depart within his voluntary departure period. We hold that where an alien files a timely motion to reconsider before his voluntary departure period has expired, his voluntary departure period is automatically tolled while he is awaiting a decision from the BIA on his motion. We also hold that the BIA abused its discretion in failing to address Barroso's denial of counsel claim. Accordingly, we remand to the BIA

for a determination of whether Barroso was denied his statutory right to counsel of his choice.[1]

## I.  BACKGROUND

Barroso is a native of Mexico who entered the United States in 1985. In 1998, he decided, in his words, to "put an end to his unregulated stay in the United States" and went in search of an attorney. He made the ill-fated choice of retaining Abad "Nork" Cabrera ("Cabrera"). Although Cabrera told Barroso that he was an attorney, he was not; instead he was a "notarial," or an immigration consultant. These people, also called "notarios," are notorious in Southern California for preying on the immigrant community.[2] The Immigration Judge ("IJ") in this case went so far as to call them "poison."

Throughout Barroso's case, he thought that Cabrera was his lawyer. He retained Cabrera, provided him with all of his documentation, consulted with him, and paid him for legal services. He was under the impression that the other attorneys he met on the courthouse steps who appeared in immigration court on his behalf all worked for Cabrera. Barroso may have had licensed lawyers appear with him in court, but all of his legal advice came from Cabrera. Indeed, the last two lawyers

---

[1]Because we are remanding the case on this ground, we do not reach Barroso's ineffective assistance of counsel claim.

[2]Due to a semantic and cultural misunderstanding, Latino immigrants are particularly at risk of being exploited by "notarios." Anne E. Langford, Note, *What's in a Name? Notarios in the United States and Exploitation of a Vulnerable Latino Immigrant Population*, 7 Harv. Latino L. Rev. 115, 116 (2004). Latino immigrants often mistakenly believe that "notarios" are lawyers because in many Latin American countries, notarios are "a select class of elite attorneys subject to rigorous examinations, regulation, and codes of professional responsibility." *Id.* (internal quotation marks omitted). In the state of Nueva Leon in Barroso's native country Mexico, an attorney must have practiced law for at least five years and pass a "famously difficult" exam before being designated a "notario." *Id.* at 120.

who "represented" him did not speak Spanish and, as Barroso does not speak English, they did not communicate at all.

The first thing Cabrera told Barroso to do was to file an application for political asylum. This advice was inexplicable, given that Barroso had no fear of returning to Mexico. The consequence of this advice, however, was that he came to the attention of the Immigration and Naturalization Service ("INS"), which served him on May 22, 1998, with a Notice to Appear before the immigration court.

At his first hearing, Barroso was represented by Xavier Vega ("Vega"), an attorney provided by Cabrera. During that hearing, Barroso withdrew his asylum application and indicated that he wanted to apply for cancellation of removal and, in the alternative, for voluntary departure. Vega was supposed to file the application for cancellation of removal on September 9, 1998. However, on that date, Vega was absent from court and had not filed it. Cabrera had obtained another attorney for Barroso, Ronald Peake ("Peake"), who asked for a continuance in order to do so. The continuance was granted. To this end, Barroso supplied Cabrera with documentation about his qualifying relatives, physical presence, and moral character; he was told that an application on his behalf would be filed on time.

On the appointed date, February 19, 1999, Barroso arrived in court as scheduled, but Peake failed to appear. Peake had also neglected to file the application for cancellation of removal. The IJ continued the hearing until March 12, 1999, but stated that the application must be filed by that date.

On March 12, 1999,[3] Ramin Ghashghaei ("Ghashghaei"),

---

[3]Although the transcript of this hearing in the administrative record is not dated, March 12th is the date that was set by the IJ at the prior hearing on February 19th. Moreover, the record contains a Notice of Hearing dated February 19th which states that the next hearing is scheduled for March 12th. On this basis, we presume that the hearing occurred, as scheduled, on March 12th.

appeared on behalf of Barroso. Although the record does not reflect what occurred just prior to the hearing, we know that there was some confusion about the representation because the IJ told Ghashghaei, "Your client doesn't know that you have replaced Mr. Peake." At this time, Ghashghaei filed the application for cancellation of removal.[4] The IJ set the next hearing date for October 12, 1999. However, on July 6, 1999, the court sent a notice that the hearing had been rescheduled to February 17, 2000. There is no transcript in the record of a hearing on February 17, 2000 having taken place. However, the record shows that on February 17, 2000, a notice was mailed to Ghashghaei, but not Barroso, stating that the next hearing was scheduled for January 23, 2001. The record also shows that on February 18, 2000, Ghashghaei submitted a motion for continuance, requesting that the court re-schedule the January 23rd hearing because of a conflict. A notice that the hearing had been rescheduled for one day later, January 24, 2001, was mailed to Ghashghaei, but not to Barroso.[5]

At the hearing on January 24, 2001, Ghashghaei asked to be relieved as counsel to Barroso, because Barroso had retained new counsel due to communication problems with Ghashghaei. The IJ dismissed Ghashghaei and asked Barroso why his new counsel was not present. Barroso explained that Ghashghaei had initially refused to give him the notice of the hearing when he had asked for it. Barroso testified that Ghashghaei "just recently" gave him notice that the hearing was on January 24th, by which time "it was too late" for his new attorney to be able to attend. The IJ refused to believe Barroso, stating that Barroso had known about the hearing for over a year since he had been present at the February 17, 2000 hearing. However, Barroso's wife later testified that she and

---

[4]The application was woefully inadequate; it did not include the evidence Barroso had provided to Cabrera and lacked the documentary evidence necessary for his case.

[5]The record shows that notices for the September 9, 1998 and March 12, 1999 hearings had been sent to Barroso's home address.

her husband had not come inside the courtroom on February 17, 2000. She explained that they waited outside and when Ghashghaei emerged from the courtroom, he told them he had obtained an extension but never gave them notice of the hearing date until the night before the January 24th hearing.

The IJ also pressed Barroso on why he did not simply retain Ghashghaei as his lawyer. Barroso explained that he could not communicate with Ghashghaei because of the language barrier and that Ghashghaei had never given Barroso an appointment so that Barroso could bring in his documents and speak with him. The IJ again did not believe Barroso's claim, stating that Ghashghaei is "a conscientious and responsible attorney."

Despite Barroso's explanation of why he had discharged Ghashghaei and why his new counsel was unable to attend the hearing, and despite his expressed desire to be represented by his new attorney, the IJ refused to grant Barroso a continuance so that he could appear with his new attorney:

JUDGE to MARTINEZ BARROSO

> Q.  . . . This case has been continued again and again. You have changed lawyers twice. And you have always until the last minute before your hearing. So I don't know exactly what your intention is, but it seems to me that what you are doing [sic] to do is delay the case. So I am not going to give you any further continuances. Your case will be heard today. And it will either be granted or denied today.

> A.  The only thing if you can give me a last chance. I am not asking much, a month to two months so I can bring everything so I can present it for this case.

> Q. I can't do that. The reason you have gotten so
>     many long continuances is because my calendar
>     right now is out to September 2002. I can give
>     you a hearing earlier than that only on an emer-
>     gency basis. And the only emergency basis in
>     this Court is asylum cases or cases where peo-
>     ple are about to lose eligibility for relief which
>     is not your situation. So I am not going to give
>     you a continuance. You will have your case
>     today. You can testify and you can call your
>     wife as a witness if you want.

At that point, Barroso was immediately sworn in to testify and forced to proceed without an attorney or any knowledge of the immigration laws. Because Barroso's new attorney had assured him that he would be able to obtain a continuance, Barroso did not have any of his supporting documentation or witnesses, other than his wife, with him that day.

Barroso testified that he first came to the United States in 1985. In 1988, he was convicted of drunk driving. He was arrested when he attempted to enter the United States illegally in 1989, served forty-five days in jail, and was deported to Mexico.[6] He returned illegally in 1990. Barroso married Juana Gomez ("Gomez"), a permanent resident of the United States, in 1998. Gomez was awaiting her citizenship papers at the time of the January 24, 2001 hearing, so she had not filed a motion on his behalf for adjustment of status, on the advice of "notarial" Cabrera. Barroso's three children were born by a former spouse, now deceased, in the United States.

During the hearing it became clear that Barroso had believed the notarial, Cabrera, to be his lawyer. The IJ responded to the fact that Barroso had been defrauded by Cabrera in the following way:

---

[6]The record does not contain any documentary evidence about this deportation.

The people you have chosen to deal with have no legal obligations. If they cheat you, that is just too bad. There is nothing you can do about it. And you would have been much wiser to listen to your attorneys instead of listen to notarials. And you may pay the price for that.

The IJ denied Barroso's application for cancellation of removal. He recited the four criteria for eligibility for cancellation of removal: (1) continuous physical presence for ten years preceding the alien's application; (2) good moral character; (3) no convictions for certain criminal offenses; and (4) exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a United States citizen or an alien lawfully admitted for permanent residence. As to the first criterion, the judge stated that Barroso "probably" had ten years total in the country, however his 1990 deportation might disrupt a finding of ten years continuous presence. The IJ found that Barroso met both the second and third eligibility criteria. As to the fourth criterion, the IJ held that Barroso's case was not sufficiently exceptional and extremely unusual to merit a finding of hardship.

The IJ also stated in his oral decision that Barroso had "been cheated and . . . lied to" and had been subjected to "exceptionally inadequate legal counsel." However, the IJ found that Barroso's reliance on Cabrera's legal counsel had been unreasonable. The IJ stated that "[t]he strategy adopted by Mr. Cabrera is obviously to wait until right before the hearing after as many continuances as possible and then switch attorneys at the last minute to get another continuance."

The IJ granted Barroso voluntary departure. Barroso appealed the IJ's decision to the BIA on the basis of ineffective assistance of counsel. On February 20, 2003, the BIA affirmed the IJ's decision on the ground that Barroso had not complied with the conditions set forth in *Matter of Lozada*, 19 I. & N. Dec. 637 (1988), for establishing ineffective assis-

tance of counsel. The BIA granted Barroso a thirty-day period for voluntary departure. On March 24, 2003, Barroso filed a motion to reconsider with the BIA in which he asserted two claims: first, ineffective assistance of counsel, and second, that he was denied his statutory right to counsel of his choice when the IJ insisted on conducting the hearing without obtaining a valid waiver of his statutory right to such counsel.[7]

On June 10, 2003, the BIA denied his motion on two grounds. First, the BIA concluded that pursuant to 8 U.S.C. § 1229c(d) (§ 240B(d) of the Immigration and Nationality Act),[8] Barroso's failure to depart the United States within his thirty-day voluntary departure period barred him from applying for cancellation of removal and made him statutorily ineligible for the relief sought. Second, the BIA found that the record did not support a claim of ineffective assistance of counsel and that Barroso had not shown that he was prejudiced by the actions of a former representative. Inexplicably, the BIA did not address Barroso's claim that he was denied his right to counsel of his choice. Barroso timely filed a petition for review with this court.

## II.   JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the BIA's June 10, 2003 denial of Barroso's motion to reconsider pursuant to 8 U.S.C.

---

[7]8 U.S.C. § 1362 provides,

> In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

[8]The statute provides that, "If an alien is permitted to depart voluntarily under this section and fails voluntarily to depart the United States within the time period specified, the alien shall . . . be ineligible for a period of 10 years for any further relief under . . . section[ ] § 1229b . . . of this title." 8 U.S.C. § 1229c(d).

§ 1252(a). We review the BIA's denial of a motion to reconsider for abuse of discretion. *See Oh v. Gonzales*, 406 F.3d 611, 612 (9th Cir. 2005).

## III.   ANALYSIS

### A.   Failure to Depart Within the Voluntary Departure Period

[1] The BIA's denial of Barroso's motion to reconsider on the ground that he failed to depart the United States within his voluntary departure period reflects the "significant conundrum" produced by the interaction of the Immigration and Nationality Act ("INA")'s voluntary departure and motion to reconsider provisions. *Kanivets v. Gonzales*, 424 F.3d 330, 334 (3rd Cir. 2005). On the one hand, the statute provides that an alien who is permitted to depart voluntarily and fails to do so within the specified time period is ineligible for ten years for cancellation of removal. 8 U.S.C. § 1229c(d); *see also* 8 C.F.R. § 1240.26(a) (2005). On the other hand, the statute provides aliens the right to file one motion to reconsider within thirty days of the entry of an order of removal, 8 U.S.C. § 1229a(c)(6)(B);[9] *see also* 8 C.F.R. § 1003.2(b)(2) (2005),[10] and the BIA ordinarily takes a significant period of

---

[9]At the time Barroso filed his motion, the provisions governing motions to reconsider were found at 8 U.S.C. § 1229a(c)(5). Congress recently amended § 1229a(c), *see* Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, Division B - REAL ID Act of 2005, Pub. L. No. 109-13, § 101(d), 119 Stat. 231, and as a result, the provision governing Barroso's motion presently is located at 8 U.S.C. § 1229a(c)(6). The REAL ID Act did not change the substance of the former § 1229a(c)(5) and for ease of reference, we refer to the current provision throughout the opinion.

[10]At the time Barroso filed his motion, regulatory provisions governing motions to reopen and to reconsider were codified at 8 C.F.R. § 3.2. A reorganization in 2003 placed the provisions in their current location at 8 C.F.R. § 1003.2 (2005). There are no differences between the former section 3.2 and the current section 1003.2 that affect Barroso's appeal, and, for ease of reference, we cite to the current regulations throughout the opinion.

time to decide the motion. Moreover, the BIA regulations state that if an alien leaves the country within the period allowed for voluntary departure, he forfeits any pending motion to reopen or reconsider. *See* 8 C.F.R. § 1003.2(d) (2005).[11] As a result, an alien who does *not* leave the United States within his voluntary departure period is not eligible for adjustment of status, but an alien who *does* leave the country within his voluntary departure period forfeits any pending motion to reconsider or reopen which the BIA has not yet decided. As a result, "[e]ither way, stay or go, under the BIA's interpretation, [aliens are] precluded from obtaining a ruling on the merits of their properly filed, timely motion to [reconsider]." *Azarte v. Ashcroft*, 394 F.3d 1278, 1282 (9th Cir. 2005). The BIA's interpretation thus "serves to deprive aliens who are afforded voluntary departure of their statutory right to a determination on the merits of motions to reopen [or reconsider]."[12] *Id.*

---

[11]8 C.F.R. § 1003.2(d) provides, in pertinent part,

> Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

[12]At the risk of stating the obvious, we note that *Azarte*'s reasoning applies equally well to a motion to reconsider (the motion filed by Barroso) as it does to a motion to reopen (the motion filed by the Azartes). Just as IIRIRA created a statutory right to file one motion to reopen, so too did it create a statutory right to file one motion to reconsider. *Compare* 8 U.S.C. § 1229a(c)(7)(A) ("An alien may file one motion to reopen proceedings under this section."), *with* 8 U.S.C. § 1229a(c)(6)(A) ("The alien may file one motion to reconsider a decision . . . ."). Moreover, the motion to reconsider provision interacts with the voluntary departure provision in precisely the same way as did the motion to reopen provision in *Azarte*. *See* 8 C.F.R. § 1003.2(d) (if an alien departs within his voluntary departure period, he forfeits any "motion to reopen *or* [ ] motion to reconsider") (emphasis added). Thus, there is no meaningful distinction between IIRIRA's motion to reconsider and motion to reopen provisions with regard to the voluntary departure provision.

**[2]** This court recently addressed the "Catch 22" created by the BIA's interpretation of the voluntary departure and motion to reopen/reconsider provisions. In *Azarte*, we observed that it would be "absurd" to believe that Congress, in providing a statutory right to file motions to reopen and reconsider, would intend to preclude the adjudication of those motions by invocation of the voluntary departure limitation. *Id*. at 1288-89. As a result, we held that a timely filed motion for reopening, in conjunction with a request for stay of removal or voluntary departure, tolls the voluntary departure period for the time during which the BIA considers the motion. *Id*. at 1289.[13]

The BIA's order in Barroso's case pre-dated our decision in *Azarte*. Because the BIA's ruling squarely presents the same dilemma addressed in *Azarte,* we ordered the parties to submit supplemental briefs on the impact of *Azarte* on Barroso's case. In its supplemental brief, the government claims that *Azarte* does not apply to this case for two reasons: one, Barroso failed to file his motion to reconsider within the voluntary departure period as *Azarte* requires, and two, Barroso failed to request a separate stay of his removal or his voluntary departure period when he filed his motion to reconsider. We address each contention in turn.

### 1.   Filing Within The Voluntary Departure Period

In *Azarte*, we stated that "[o]ur ability to toll the voluntary departure period is predicated on the fact that the Azartes filed their motion to reopen before their period for voluntary depar-

---

[13]In so holding, we overruled our prior analysis in *Shaar v. INS*, 141 F.3d 953 (9th Cir. 1998). *See Azarte*, 394 F.3d at 1286 (holding that "because the rationales that underlay *Shaar* are no longer applicable after IIRIRA, *Shaar* does not control our decision in this case."). The Third and Eighth Circuits have since followed *Azarte* and rejected the *Shaar* approach. *See Kanivets*, 424 F.3d at 335 (holding that "tolling applies during the period of time that the BIA deliberates on a timely motion to reopen."); *Sidikhouya v. Gonzales*, 407 F.3d 950, 952 (8th Cir. 2005) (same).

ture elapsed." 394 F.3d at 1288 n.20. Where an alien files his motion *after* his voluntary departure period has expired, the law in this circuit is clear that the BIA may properly deny the motion on that basis. *See De Martinez v. Ashcroft*, 374 F.3d 759, 763 (9th Cir. 2004) (holding that BIA did not err in denying relief where alien moved to reopen her proceedings in the BIA thirty days after the expiration of her voluntary departure period); *see also Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1174 (9th Cir. 2003) (same, where alien moved to reopen forty-four days after expiration of his voluntary departure period).

**[3]** A motion to reconsider must be filed within thirty days of the date of entry of a final administrative order of removal. 8 U.S.C. § 1229a(c)(6)(B). In its February 20, 2003 decision, the BIA granted Barroso a thirty-day voluntary departure period. Therefore, the deadlines for filing Barroso's motion to reconsider and the expiration of Barroso's voluntary departure period fell on the same date: Saturday, March 22, 2003. When the thirty-day deadline for filing a motion to reconsider expires on a Saturday, the motion is due on the next business day, which in this case was Monday, March 24, 2003. *See In re Lopez,* 1998 BIA LEXIS 10, at *1 n.1 (1998); *see also* 8 C.F.R. § 1003.38(b) ("If the final date for filing [an appeal to the BIA] falls on a Saturday, Sunday, or legal holiday, this appeal time shall be extended to the next business day."). Therefore, under the BIA's regulations, Barroso's motion to reconsider was timely if it was filed on Monday, March 24th.

The government stated in its opening brief that Barroso's motion was received on March 24th.[14] The government also

_____

[14]In its brief, the government erroneously claimed that Barroso's motion to reconsider "arguably" should have been treated as a motion to reopen because March 24th was "over thirty days" after the Board's decision. However, as we have explained, the motion to reconsider was not due until March 24th and thus was timely filed. In addition, although Barroso's motion claimed ineffective assistance of counsel, it does not fit within

conceded at oral argument that Barroso's motion was filed within the voluntary departure period. However, the government alleges for the first time in its supplemental brief that the motion was not filed within the voluntary departure period because the BIA's filing receipt for the motion was dated April 2, 2003. As a general matter, an issue is "deemed waived if it is raised for the first time in a supplemental brief." *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citation and internal quotation marks omitted). Here, the government, to the detriment of the petitioner, sought in a supplemental brief to change the facts on the basis of which an issue had been briefed and argued, without offering any explanation for its earlier representation to the court. Whether we treat its change in position as constituting a new claim or simply an attempt to withdraw the factual basis for its argument and substitute a contrary set of facts, we conclude that we will not consider it when raised for the first time in a supplemental brief.

However, even if we were to consider the government's newly stated version of the facts, we would reject its argument. Our review of the record shows that the motion was in fact filed on March 24th. The record demonstrates that it was stamped by the BIA clerk's office two times: one stamp dated March 24, 2003, the other stamp dated April 2, 2003.[15] The

this court's holding in *Iturribarria v. INS,* because Barroso had already claimed ineffective assistance of counsel in his appeal and his motion was not supported by "new evidence that was purportedly not discoverable at an earlier stage." 321 F.3d 889, 897 (9th Cir. 2003); *see also* 8 U.S.C. § 1229a(c)(7)(B) ("The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted . . . ."). Therefore, we conclude that the BIA properly treated the motion as a motion to reconsider.

[15]The BIA Practice Manual, the BIA's official guidance on filing procedures and requirements, states that the date stamp is controlling in the computation of whether a filing is timely. BIA Prac. Man., Ch. 3.1(b) (2004).

record reveals that the BIA first received the motion on March 24th, but sent a notice to Barroso's counsel on March 25th informing him that the motion listed the incorrect alien registration number. On March 28th, Barroso's counsel sent a letter correcting the registration number, and that letter was stamped as received on April 2, 2003. Thus, our review of the record shows that Barroso's motion was first filed on March 24th.

**[4]** Moreover, if Barroso's motion to reconsider had not been filed within the thirty day deadline, the BIA would have dismissed it as untimely. *See* BIA Prac. Man., Ch. 3.1(c)(iii) ("If a motion is untimely, the motion is denied.") (citing 8 C.F.R. § 1003.2(b)(2)). Here, the BIA did not do so. Accordingly, we conclude that Barroso's motion to reconsider was timely filed within the 30-day period required by 8 U.S.C. § 1229a(c)(6)(B).

Not only was his motion timely filed on March 24th, but we also conclude that by filing on March 24th, it was filed within Barroso's voluntary departure period. As we noted above, the government conceded at oral argument that the motion was filed within the voluntary departure period and therefore waived any claim that it was not so filed.[16] However, in the interest of thoroughness, we briefly explain why March 24th is both the proper deadline date for filing Barroso's motion to reconsider and the expiration date of his voluntary departure period.

While, as we have already noted, the BIA's regulations address how to calculate the due date for a motion to reconsider when the date falls on a weekend day, the only relevant Departments of Justice and Homeland Security regulations governing voluntary departure periods, 8 C.F.R. § 240.25 and

---

[16]We note that the government contended in its initial brief that March 24th was "several days after the thirty-day period allotted for voluntary departure."

8 C.F.R. § 1240.26 respectively, do not offer any guidance as to how to treat weekend days when they are the last calendar day of the voluntary departure period. Nor does the relevant statutory provision provide any guidance on the calculation of the period: the time limit on periods of voluntary departure contained in 8 U.S.C. § 1229c(b)(2) does not refer to a start or end date, but merely prescribes that "permission" to depart voluntarily "shall not be valid for a period exceeding 60 days."

In *Salvador-Calleros v. Ashcroft*, this court was presented with the same question of how to calculate the expiration of the voluntary departure period when the last calendar day falls on a weekend day. 389 F.3d 959 (9th Cir. 2004). The petitioner in *Salvador-Calleros* filed both her petition for review with this court and her motion for stay of voluntary departure on Monday, June 17, 2002, and the thirty-day deadline for both filings technically fell on Saturday, June 15, 2002. *Id.* at 964. While the government conceded that her petition for review was timely filed, it argued that the motion to stay voluntary departure was untimely because it was filed on the 32nd day. This court held that because "Congress has [not] specified a method of counting days in a statute governing [this] particular procedure," it should apply 26(a)(3) of the Federal Rules of Appellate Procedure when computing the expiration of voluntary departure periods such that the period "actually expire[s] the following Monday."[17] *Id.* at 964-65. In so holding, the court observed the need to avoid "unnecessary confusion" where "there are two separate but related thirty-day periods that relate back to the same order and start running on the same exact date." *Id.* at 965.

**[5]** Here too, we are faced with "two separate but related

---

[17]Federal Rule of Appellate Procedure 26(a)(3) provides that when counting days in order to compute a period's expiration date, the court should "[i]nclude the last day of the period unless it is a Saturday, Sunday, legal holiday . . . ."

thirty-day periods that . . . start running on the same exact date": the thirty-day period for filing a motion to reconsider and Barroso's thirty-day period for voluntary departure. The BIA regulations directly speak to the computation of the former, but are silent as to the latter. We conclude that where the deadline for filing a motion to reconsider falls on the same day as the expiration of the voluntary departure period, the proper solution is to apply the same rule to both thirty-day periods.[18] Such an approach not only avoids "unnecessary confusion" but also effectuates the purpose of both the voluntary departure and motion to reconsider statutory provisions and provides a "workable procedure for motions to [reconsider] in cases in which aliens are granted voluntary departure." *Azarte*, 394 F.3d at 1289. Therefore, we conclude that by filing his motion to reconsider on March 24th, Barroso's motion was filed within the voluntary departure period.[19]

## 2.  Requesting A Stay Of Voluntary Departure

**[6]** The government also argues that *Azarte* is inapplicable here because Barroso failed to request a stay of his removal or voluntary departure. In *Azarte*, we noted that we did not need to "reach the question whether filing a motion to reopen automatically tolls the voluntary departure period" because the petitioners in that case had requested a stay of removal. 394 F.3d at 1288, n.20. However, the *Azarte* court observed that automatically tolling the voluntary departure period upon the filing of a motion to reopen "would be consistent with the legislative scheme." *Id.* For the reasons explained below, we

---

[18]In so holding, we are not extending the voluntary departure time period in contravention of INS regulations; "we are simply determining which date should be counted as the thirtieth day." *Salvador-Calleros*, 389 F.3d at 965.

[19]We express no view as to the computation of the end-date of the voluntary departure period when there is no motion to reopen or reconsider filed. We do observe, however, that it would be reasonable to apply a uniform rule in calculating the end-date of the voluntary departure period, regardless of whether a motion to reopen or reconsider has been filed.

now take the next step which *Azarte*'s rationale demands and hold that the timely filing of a motion to reopen or reconsider automatically tolls the voluntary departure period. Such a conclusion best effectuates Congress' purpose in enacting the voluntary departure and motion to reopen/reconsider provisions, and follows "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." *INS v. St. Cyr*, 533 U.S. 289, 320, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

First and foremost, as *Azarte* explained, automatic tolling is "consistent with the legislative scheme." 394 F.3d at 1288 n.20. Indeed, in issuing the latest interim rule concerning "the effect of a motion or appeal to the Immigration Court, BIA, or a federal court on any period of voluntary departure already granted," the Department of Justice stated:

> the Department considered several options, but *has not adopted any position* or modified the interim rule. The Department has identified three possible options: no tolling of any period of voluntary departure; *tolling the voluntary departure period for any period that an appeal or motion is pending*; or setting a brief, fixed period of voluntary departure (for example, 10 days) after any appeal or motion is resolved.

*Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10325-26 (March 6, 1997) (interim rule) (emphasis added). As the interim rule makes clear, the Justice Department considers automatic tolling to be a logical resolution to the question of the interrelationship between the statute's motion to reopen/reconsider and voluntary departure provisions. In fact, two of the three approaches being considered by the agency contemplate that the alien *always* be allowed to remain in the country until after the

motion to reconsider/reopen is decided. As the interim rule has never been replaced by a final one, it remains our best guidance on this question.[20]

**[7]** In addition, we note that IIRIRA contains no requirement that an alien must file an affirmative request to stay voluntary departure. *See* 8 U.S.C. § 1229c, § 1229a; *Desta v. Ashcroft*, 365 F.3d 741, 749 (9th Cir. 2004) (noting that IIRIRA made no "provision for requiring an affirmative request to stay voluntary departure.").[21] Nor do the Department of Justice and Department of Homeland Security regulations on voluntary departure contain any provisions regarding staying the voluntary departure period. *See* 8 C.F.R. § 1240.26, § 240.25. Although the BIA's regulations limit the authority to "extend the time within which to depart voluntarily specified initially by an immigration judge or the Board", § 1240.26(f),[22] automatic tolling does not *extend* the amount

---

[20]*See Azarte*, 394 F.3d at 1289 n.21 ("When promulgating the interim rule, the Justice Department explicitly stated that its rule did not resolve how motions to reopen and voluntary departure periods should be construed together . . . [and] avoided making a regulatory decision until the adoption of a final rule.").

[21]We note that the statute does instruct that "service of a petition [for review with the court of appeals] does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." 8 U.S.C. § 1252(b)(3)(B). However, this provision is inapposite here because it addresses petitions for review filed with the court of appeals, not motions for reconsideration filed with the BIA. Moreover, unlike 8 C.F.R. § 1003.2(d) which provides that an alien forfeits any pending motion to reconsider if he departs, a court of appeals "may entertain a petition *after the alien has departed*." *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1171 (citing 8 U.S.C. § 1252(b)(3)(B)) (emphasis added). Accordingly, petitions for review to the court of appeals do not present the same "conundrum" with which we are presented here. Moreover, this circuit has held that it has the equitable power to stay the voluntary departure period while reviewing a removal order. *See El Himri v. Ashcroft*, 344 F.3d 1261, 1262 (9th Cir. 2003).

[22]8 C.F.R. § 1240.26(f) provides, in part: "Authority to extend the time within which to depart voluntarily specified initially by an immigration

of time granted for voluntary departure. *See* BLACK'S LAW DICTIONARY (8th ed. 2004) (defining "toll" as "to stop the running of" a time period and an "extension" as "[a] period of additional time to take an action"). "A suspension of a voluntary departure period merely tolls the running of that period; it does not extend it." *Bocova v. Gonzales*, 412 F.3d 257, 269 (1st Cir. 2005); *see also Desta*, 365 F.3d at 747 ("[W]hile we are stopping the clock from running on the time petitioner has to depart voluntarily, we are not adding more time to that clock."). Therefore, tolling the voluntary departure period while the BIA considers the merits of a motion to reopen or reconsider neither violates the statutory time limit in 8 U.S.C. § 1229c(b)(2), nor intrudes on the district director's authority to extend the time limit as specified in 8 C.F.R. § 1240.26(f).

Although the government failed to mention it either in its briefs or at oral argument, and thus does not rely on it on this appeal, we note that there is one Department of Justice regulation which might be argued to preclude automatic tolling of the time for voluntary departure and to require the filing of a separate stay motion. 8 C.F.R. § 1003.2(f) (2005) provides that "the filing of a motion to reopen or a motion to reconsider shall not stay the execution of any decision made in the case. . . . unless a stay of execution is specifically granted by the Board, the Immigration Judge, or an authorized officer of the Service."[23] We conclude that the regulation is not applicable and that tolling the time for voluntary departure does not constitute "stay[ing] the execution of a[ ] decision made in the case" within the meaning of section 1003.2(f).

---

judge or the Board is only within the jurisdiction of the district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs." *See also Desta*, 365 F.3d at 747 (noting that extending the period for voluntary departure would be "in contravention of INS regulations.").

[23]8 C.F.R. § 1003.2(f) contains an exception for motions filed pursuant to the provisions of §§ 1003.23(b)(4)(ii) and 1003.23(b)(4)(iii)(A), neither of which is applicable here.

The "execution of a decision" is best understood in terms of a deportation order; in fact, 8 C.F.R. § 1003.2(f) is headed "Stay of deportation." When the government puts an alien on a plane or a bus in order to send him back to his native country, it is "executing" the deportation decision. However, when an alien who has been given permission by the BIA to depart voluntarily does so, he is not "executing" the voluntary departure order. Indeed, it is only the government that "executes" a decision in an immigration proceeding, not an individual alien.[24] Therefore, tolling the time in which an alien has been granted permission to depart does not "stay the *execution* of a[ ] decision made in [his] case." 8 C.F.R. § 1003.2(f) (emphasis added). As a result, we conclude that the regulation does not apply to a grant of voluntary departure.

Moreover, were the BIA to construe 8 C.F.R. § 1003.2(f) as applying to a grant of voluntary departure, such an interpretation would not, in light of *Azarte*, be "based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We reject agency interpretations of the INA that "would produce absurd results." *Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) (citing *United States v. Wilson*, 503 U.S. 329, 334, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992)). More specifically, "when interpreting IIRIRA, we avoid an interpretation that would lead to an absurd result, such as the expenditure of unnecessary judicial resources or overly severe consequences toward aliens." *Desta*, 365 F.3d at 746.

---

[24]The only Ninth Circuit case of which we are aware to address this regulation (albeit in its earlier but identical incarnation as 8 C.F.R. 3.2(f)) held that it applies to the BIA's decision to rescind an alien's status as a lawful permanent resident. *See Baria v. Reno*, 180 F.3d 1111, 1113 (9th Cir. 1999). Like a deportation order, and *unlike* a grant of voluntary departure, a rescission order is a decision which must be executed by the government. Thus, the *Baria* court's holding is entirely consistent with our reasoning here.

Our decision in *Azarte* illustrates why applying § 1003.2(f) so as to require the filing of a separate stay motion would "create[ ] absurd results when viewed in light of the larger statutory scheme." *Bona v. Gonzales*, 425 F.3d 663, 670 (9th Cir. 2005). Were we to require the filing of an additional motion along with a motion to reopen or reconsider, then under *Azarte*, the BIA would be obligated to grant every such motion in order to afford aliens "their statutory right to a determination on the merits of motions to reopen." *Azarte*, 394 F.3d at 1282. Because *Azarte* requires that the BIA decide a motion to reopen or reconsider on the merits when the motion is filed within the voluntary departure period, the BIA would not be permitted to deny the request for a stay in these circumstances. *See id.* at 1289. As a result, requiring aliens to file a separate stay motion along with their timely filed motion to reopen or reconsider would amount to nothing more than an empty procedural requirement that would simply place an additional bureaucratic burden on aliens who in any event often have difficulty following the complex procedural requirements of our immigration laws. At the same time, it would generate unnecessary paperwork for all parties involved, including the overworked and undermanned bureaucracy that is currently struggling to keep up with the rapidly increasing number of filings of motions, notices, stays, orders, decisions, appeals and other types of papers.

**[8]** In sum, to deny those aliens who, for whatever reason, fail to file a separate stay motion, the opportunity to receive a ruling on the merits of their timely filed motion to reopen or reconsider, while granting relief to those aliens whose counsel are sufficiently sophisticated to enclose the additional document, would be contrary to the statutory purpose and to our reasoning in *Azarte*. Automatic tolling ensures "a workable procedure for motions to reopen [or reconsider] in cases in which aliens are granted voluntary departure, and [ ] effectuate[s] the purposes of the two statutory provisions." *Id*. We therefore conclude that the timely filing of Barroso's motion

to reconsider automatically tolled his time in which to voluntarily depart.

We note finally that our decision is required by *Azarte*, because in that case, while a request for a stay was filed, the request had not been acted upon. If a voluntary departure date could be tolled only by action of an immigration official, officer or entity, as a ruling that the regulation is applicable here would require, the date would not have been tolled in *Azarte*; as a result, we would have been compelled to deny rather than grant the petition for review. Thus, in addition to being compelled for the reasons set forth above, the result we reach here is required in order to maintain consistency in our circuit law.

**[9]** Accordingly, we hold that the BIA abused its discretion in denying Barroso's motion to reconsider on the ground that he failed to depart the United States within his thirty-day voluntary departure period.[25]

## B.   Denial of the Right to Counsel

In his motion to reconsider, Barroso asserted two claims: that he was inadequately represented and that he was denied his right to counsel of his choice when the IJ forced him to proceed at the hearing without his attorney present.[26] As to the second claim, the BIA inexplicably failed to address it. At

---

[25]Because we find that *Azarte* controls this portion of the BIA's ruling, we need not reach Barroso's equal protection claim on this issue.

[26]In its brief, the government stated that Barroso's motion asserted ineffective assistance of counsel "as the sole basis for relief." However, this claim is directly refuted by the record which clearly shows that Barroso's motion to reconsider stated two arguments: (1) "respondent was inadequately represented," and (2) "the respondent was denied his right to counsel of his own choice when the immigration judge insisted on conducting an immigration hearing over the repeated objection of the respondent." Moreover, we take note that the government addressed the statutory right to counsel claim in its brief and at no point did the government assert that Barroso had not exhausted it.

oral argument, the government attempted to explain the BIA's silence on this claim by arguing that the Board "interpreted" Barroso's denial of counsel claim as an ineffective assistance of counsel claim and "ruled on it in that way." Hard as we may look, we cannot find where in its decision the Board ruled on the denial of counsel claim.

[10] "[T]he BIA [is] not free to ignore arguments raised by a petitioner." *Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005). In failing to address this separate ground for relief, the BIA abused its discretion.[27] *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 870 (9th Cir. 2003); *see also Mejia v. Ashcroft*, 298 F.3d 873, 878-80 (9th Cir. 2002) (holding that the BIA abused its discretion by neglecting to address all of petitioner's claimed bases for asylum). The BIA's failure to address the denial of counsel claim is particularly puzzling in light of the fact that Barroso's claim is undeniably strong. The record clearly shows that Barroso did not knowingly and voluntarily waive his statutory right to counsel. *See Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (failure to obtain a knowing and voluntary waiver is "an effective denial of the right to counsel, which, in the light of the entire administrative record, may be an abuse of discretion.") (internal quotation marks omitted). Nor was Barroso's need for a continuance "due to unreasonable conduct on the part of alien." *Baires v. INS*, 856 F.2d 89, 93 (9th Cir. 1988). Although the IJ's frustration with delay in this case is understandable, the law of

---

[27]While the right to counsel in immigration proceedings does have a constitutional dimension which this court may review in the first instance, we decline to do so here. Barroso's claim was fairly presented as a statutory violation: his claim referred to his "right to counsel of his choice", thereby mirroring the statute's language. *See* 8 U.S.C. § 1362 (an alien has the right to be represented by "such counsel . . . as he shall choose."). Because Barroso presented a statutory claim and the Board was obligated to rule on it, we should not reach the constitutional question at this time. *Lyng v. N.W. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (noting that courts should "avoid reaching constitutional questions in advance of the necessity of deciding them.").

this circuit is clear that concerns about delay "cannot overshadow [the petitioner's] statutory right to counsel of choice." *Baltazar-Alcazar v. INS*, 386 F.3d 940, 946 (9th Cir. 2004).

**[11]** Although it appears that Barroso may well have been denied his statutory right to counsel, it is not for us to determine this question in the first instance. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). Accordingly, we grant the petition and remand to the BIA to reconsider whether Barroso was denied that statutory right.

**PETITION GRANTED; REMANDED FOR FURTHER PROCEEDINGS.**